**IN THE SUPREME COURT OF TENNESSEE**
**AT KNOXVILLE**

FILED

January 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,  (

  Plaintiff-Appellee,  (

                          (

v.  (

                          (

BRIAN DANIEL,  (

  Defendant-Appellant.  (

FOR PUBLICATION

Filed: January 31, 2000

Knox Criminal

Hon. Richard Baumgartner,
Judge

No. E1997-00142-SC-R11-CD

For Plaintiff-Appellee:

Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Todd R. Kelley
Assistant Attorney General
Nashville, Tennessee

Randall E. Nichols
District Attorney General
Sixth Judicial District

Scott Green
Assistant District Attorney General
Knoxville, Tennessee

For Defendant-Appellant:

Mark E. Stephens
District Public Defender

Paula R. Voss
Assistant Public Defender

Jamie Niland
Assistant Public Defender
(Trial Only)

**O P I N I O N**

JUDGMENT OF TRIAL COURT AND
COURT OF CRIMINAL APPEALS
REVERSED; CONVICTION VACATED;
CHARGE DISMISSED.                    DROWOTA, J.

      The dispositive issue in this appeal is whether a "seizure" within the

meaning of the Fourth Amendment to the United States Constitution and Article I,

section 7 of the Tennessee Constitution occurred when a police officer

approached the defendant, Brian Daniel, in the parking lot of a convenience store, asked Daniel to produce some identification, and retained Daniel's identification to run a computer check for outstanding warrants.

The trial court found that no seizure took place prior to the time the officer placed Daniel under arrest on an outstanding warrant which was revealed by the computer check of Daniel's identification. Accordingly, the trial court denied Daniel's motion to suppress the marijuana which was discovered while the officer was searching Daniel's person incident to the arrest. Thereafter, Daniel pled guilty to possession of marijuana, but reserved the right to seek appellate review pursuant to Tennessee Rule Criminal Procedure 37(b)(2)(i).[1] The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress.

For the reasons stated herein, we conclude that the defendant was seized when the police officer retained his identification to run a computer check for outstanding warrants. Because the officer lacked reasonable suspicion for the seizure,[2] the judgment of the Court of Criminal Appeals upholding the trial court's denial of the motion to suppress is reversed; the defendant's conviction is vacated, and the charge is dismissed.

## FACTUAL BACKGROUND

The facts in this appeal are not in dispute. The only witness to testify at the suppression hearing was Deputy Jim Wright of the Knox County Sheriff's

---

[1]Rule 37(b)(2)(i), Tennessee Rule Criminal Procedure, provides in pertinent part as follows:
(b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case. . . .

[2]The State concedes, and we accept for purposes of this decision, that the officer lacked the reasonable suspicion required to justify a seizure, and that, if a seizure took place, the drugs found in Daniel's pocket must be suppressed as tainted "fruit of a poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963).

Department. Deputy Wright stated that while on patrol at approximately 9:00 p.m. on August 16, 1995, he observed an automobile parked in an unlighted area beside Bengie's Market in Knox County. Four men were standing around the outside of the vehicle. The sun was setting and it was "dusky dark" outside.

Deputy Wright drove up to the men in his patrol car "to see what the individuals were doing" because he thought it was peculiar for four young men to be standing around an automobile in the dark. Deputy Wright asked the men what was going on and requested that they provide some identification. The men complied. Deputy Wright examined the identification and retained the identification to run a computer check for outstanding warrants. While waiting for the computer check, two of the young men asked for and received permission from Deputy Wright to go inside the market to use the restroom and buy a soft drink.

After the computer check revealed an outstanding warrant for Daniel's arrest, Deputy Wright handcuffed Daniel and placed him under arrest. Before conducting a search of Daniel incident to the arrest, Deputy Wright asked if Daniel had anything sharp in his pockets. Daniel replied that he had a bag of marijuana in his pocket.

Daniel was indicted for possession of a controlled substance, and he moved to suppress the marijuana. In support of his motion, Daniel argued that the evidence had been discovered as a result of an unlawful seizure and was thereby tainted. Daniel asserted that the initial police questioning constituted an illegal seizure because he was not violating any law when the officer initiated the questioning, and the officer had no reasonable suspicion to believe that he had violated the law or was about to violate the law.

The trial court denied Daniel's motion, finding that no seizure took place.

Daniel pled guilty to the charged offense,[3] but was permitted, with the consent of the District Attorney General, to preserve the suppression issue as a certified question of law for appeal pursuant to Tennessee Rule Criminal Procedure 37(b)(2)(i). The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress. Thereafter, this Court granted Daniel's application for permission to appeal. For the reasons that follow, the judgments of the lower courts are reversed.

## STANDARD OF REVIEW

The standard by which an appellate court reviews a trial court's findings of fact on suppression issues is as follows:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Beare v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993). In this case, the trial court heard the testimony of only one witness. The facts are not disputed. As a result, the trial court's conclusion that a seizure did not occur is a conclusion of law derived from an application of the law to the undisputed facts of this case. Therefore, in determining whether the trial court and the Court of Criminal Appeals erred in denying the defendant's motion to suppress, we apply de novo review. Id.; see also State v. Crutcher, 989 S.W.2d 295, 303 (Drowota, J. , dissenting).

## ANALYSIS

---

[3]Daniel was given a sentence of eleven months and twenty-nine days on the conviction with the entire sentence suspended upon payment of a $250 fine.

The Fourth Amendment[4] to the United States Constitution provides that the people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  Similarly, Article 1, section 7 of the Constitution of Tennessee guarantees "that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures. . . ."  However, neither the Fourth Amendment nor Article I, section 7 limit all contact between police and citizens.  Instead these constitutional provisions are designed "to prevent arbitrary and oppressive interference with the privacy and personal security of individuals."  INS v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762, 80 L. Ed. 2d 247 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554, 96 S. Ct.3074, 3081, 49 L. Ed. 2d 1116 (1976)); Yeargan, 958 S.W.2d at 629; State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) ("[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment.").  Thus, these constitutional protections are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen.  See generally 4 Wayne R. LaFave, Search & Seizure, § 9.3 (3d ed. 1996 & Supp. 1999) (hereafter LaFave § __ at __.)

In construing the demands of the Fourth Amendment, courts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause, see Brown v. Illinois, 422 U.S. 590, 95 S. Ct.2254, 45 L. Ed. 2d 416 (1975); (2) a brief investigatory detention which must be supported by reasonable suspicion, see Terry v. Ohio, 392 U.S. 1, 16 S. Ct.1868, 20 L. Ed. 2d 889 (1968);  and (3) brief police-citizen encounters which require no objective justification, see  Florida v.  Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991).  See, e.g., Crutcher, 989 S.W.2d at 300; United States v. Berry, 670 F.2d 583 (5th Cir. 1982) (discussing the three types of police-citizen interactions).  While arrests and investigatory detentions

_____

[4]The Fourth Amendment is applicable to the states through the Fourteenth Amendment.  Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081 (1961).

implicate varying degrees of constitutional protection, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16, 88 S. Ct.1868, at 1879 n.16; Crutcher, 989 S.W.2d at 300; State v. Moore, 776 S.W.2d 933, 937 (Tenn. 1989).[5]

Indeed, courts have repeatedly held that even when police have no basis for suspecting that an individual has committed or is about to commit a crime, the officer may approach an individual in a public place and ask questions without implicating constitutional protections. Bostick, 501 U.S. at 434, 111 S. Ct.2386; Florida v. Royer, 460 U.S. 491, 497, 103 S. Ct.1319, 1324, 75 L. Ed. 2d 229 (1983) (plurality opinion); Crutcher, 989 S.W.2d at 300; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Moore, 776 S.W.2d at 938; State v. Butler, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990). The rule has been further explained as follows:

> law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

---

[5]The concurring opinion asserts that under Brown v. Texas, 443 U.S. 47, 99 S. Ct. 2639, 61 L. Ed. 2d 357 (1979) and Hughes v. State, 588 S.W.2d 296 (Tenn. 1979) a seizure occurs whenever an officer approaches a citizen and requests identification. In Brown, the officer failed to recognize that a citizen has a right to refuse to produce identification, and the seizure occurred when the officer arrested the citizen because the citizen refused to produce identification. See Brown, 443 U.S. at 50, 99 S.Ct. at 2640 ("When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment.") (Emphasis added.) In Hughes, the officers located the defendant as he drove up an interstate approach ramp. Obviously, the defendant was stopped in some manner and directed to drive back to the Country Store by the officers even though the opinion states that "Hughes drove voluntarily to the Country Store and parked in front." Hughes, 588 S.W.2d at 300. Therefore, the seizure occurred at any one of the following times (1) when the officers in some manner stopped Hughes as he drove up the interstate approach ramp; (2) when the officers directed Hughes to drive back to the store; or (3) when the officers directed Hughes to roll down his window. The facts in both Brown and Hughes are clearly distinguishable from the initial approach in this case which involved only a request for identification.

Royer, 460 U.S. at 497, 103 S. Ct. at 1324;  see also Bostick, 501 U.S. at 434, 111 S. Ct. at 2386; Delgado, 466 U.S. at 216-17, 104 S. Ct. at 1762-63; Brown v. Texas, 443 U.S. 47, 50-53, 99 S. Ct. 2639, 2640-42, 61 L. Ed. 2d 357 (1979); Moore, 776 S.W.2d at 938.

Accordingly, a "seizure" implicating constitutional concerns occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave.  See Bostick, 501 U.S. at 437, 111 S. Ct. at 2387; Michigan v.  Chesternut, 1486 U.S. 567, 574, 108 S. Ct.1975, 1979, 100 L. Ed. 2d 565 (1988); Delgado, 466 U.S. at 215, 104 S. Ct. at 1762; Royer, 460 U.S. at 502, 103 S. Ct. at 1326-27; Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877; Moore, 776 S.W.2d at 937; State v. Wilhoit, 962 S.W.2d 482, 486 (Tenn. Crim. App. 1997); State v.Bragan, 920 S.W.2d 227, 243 (Tenn. Crim. App. 1995); State v. Darnell, 905 S.W.2d 953, 957 (Tenn. Crim. App. 1995); LaFave § 5.1(a).  "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter."  Bostick, 501 U.S. at 440, 111 S. Ct. at 2389; see also Chesternut, 486 U.S. at 569, 108 S. Ct. at 1977.

Application of this objective standard ensures that the scope of these constitutional protections does not vary depending upon the subjective state of mind of the particular citizen being approached.  Id.  Under this analysis police-citizen encounters do not become "seizures" simply because citizens may feel an inherent social pressure to cooperate with police.  People v. Paynter, 955 P.2d 68, 72 (Colo. 1998).  "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."  Delgado, 466 U.S. at 216, 104 S. Ct. at 1762.  Some of the factors which are relevant and should be considered

by courts when applying this totality of the circumstances test include the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen. See generally Chesternut, 486 U.S. at 575, 108 S. Ct. at 1980; Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877; People v. Pancoast, 659 P.2d 1348 (Colo. 1982); LaFave § 5.1(a).

This test is "necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." Chesternut, 486 U.S. at 573, 108 S. Ct. at 1979; Moore, 776 S.W.2d at 937. However, under the analysis delineated above, courts have consistently held that the Fourth Amendment is not implicated and no seizure occurs when police approach an individual, in a public place, or in a parked car,[6] ask questions, and request to search, so long as police do not convey

---

[6]Although police need not have reasonable suspicion of illegal activity to approach a vehicle stopped in a public place and ask the occupant questions, see Pulley, 863 S.W.2d at 30, when police stop a moving vehicle, a seizure implicating the protection of both the state and federal constitutions has occurred. See Yeargan, 958 S.W.2d at 630; Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660 (1979). As previously recognized, to be constitutionally permissible, the seizure must be supported by reasonable suspicion. Id.

a message that compliance with their requests is required.[7]  On the other hand, courts have typically held that an encounter becomes a "seizure" if an officer: (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier responded fully to police inquiries; (4) verbally orders a citizen to stop and answer questions; (5) retains a citizen's identification or other property; (6) physically restrains a citizen or blocks the citizen's path; (7) displays a weapon during the encounter.  See generally LaFave § 9.3(a), at 104 (collecting cases).

Applying these governing principles to the facts in this case, we must determine whether the interaction between Officer Wright and Daniel constituted a seizure prior to the time Officer Wright arrested Daniel pursuant to the outstanding warrant.  The State concedes that if a seizure occurred prior to the arrest, the evidence must be suppressed because the officer had no reasonable suspicion to justify the seizure.

Under the circumstances of this case, we conclude that Officer Wright's conduct in merely approaching the defendant, inquiring what was going on, and asking to see Daniel's identification did not constitute a seizure as that term is

---

[7]See Bostick, 502 U.S. at 435, 111 S. Ct.at 2386; Delgado, 466 U.S. at 216, 104 S. Ct.at 1762; Royer, 460 U.S. at 501, 103 S. Ct.at 1326; Mendenhall, 446 U.S. at 556, 100 S. Ct.at 1878; Pulley, 863 S.W.2d at 30; Moore, 776 S.W.2d at 938; Wilhoit, 962 S.W.2d at 486; Butler, 795 S.W.2d at 685; see also Hammons v. State, 940 S.W.2d 424, 428 (Ark. 1997); Thompson v. State, 724 So. 2d 62, 64 (Ala. Crim. App. 1998); People v. Paynter, 955 P.2d 68, 73 (Colo. 1998); Chambers v. State, 700 So.2d 68 (Fla. Dist. Ct. App. 1997); Quinn v. State, 485 S.E.2d 483, 485 (Ga. 1997); People v. Evans, 689 N.E.2d 142, 148 (Ill. App. Ct. 1997); State v. Baacke, 932 P.2d 396, 407 (Kan. 1997); People v. Taylor, 564 N.W.2d 24, 28 (Mich. 1997); State v. Harris, 590 N.W.2d 90, 98 (Minn. 1999); State v. West, 459 S.E.2d 55, 57 (N.C. Ct. App. 1995); State v. Konewko, 529 N.W.2d 861, 863 (N.D. 1995); State v. Pierce, 709 N.E.2d 203, 206 (Ohio Ct. App. 1998); State v. Kirkpatrick, 462 S.E.2d 884, 888 (S.C. Ct. App. 1995); Smith v. State, 944 S.W.2d 453, 458 (Tex. Ct. App. 1997); Richards v. Commonwealth, 383 S.E.2d 268, 270 (Va. Ct. App. 1989); State v. Armenta, 948 P.2d 1280, 1285 (Wash. 1997). See generally LaFave § 9.3(a), at 102-03.

defined in the constitutional context.[7] Although the evidence in the record is minimal, it appears that the initial encounter was not accompanied by physical force or a show of authority. There was no evidence that Officer Wright either drew a weapon, ordered Daniel to stop and answer questions, or demanded that Daniel produce identification. Moreover, there was no evidence that Wright physically restrained Daniel, instructed him not to walk away, or blocked his path. The encounter did not become a seizure simply because Daniel may have felt inherent social pressure to cooperate with Officer Wright. Delgado, 466 U.S. at 216, 104 S. Ct. at 1762; Paynter, 955 P.2d at 72.

However, what begins as a consensual police-citizen encounter may mature into a seizure of the person. While many of the circumstances in this case point in the direction of a consensual police-citizen encounter, one circumstance reflects a distinct departure from the typical consensual encounter — Officer Wright's retention of Daniel's identification to run a computer warrants check. Without his identification, Daniel was effectively immobilized. Abandoning one's identification is simply not a practical or realistic option for a reasonable person in modern society. Royer, 460 U.S. at 501-02, 103 S. Ct. at 1326; United States v. Jordan, 958 F.2d 1085, 1087 (D.C. Cir. 1992). Contrary to the State's assertion, when an officer retains a person's identification for the purpose of running a computer check for outstanding warrants, no reasonable person would believe that he or she could simply terminate the encounter by asking the officer to return the identification. Accordingly, we hold that a seizure within the meaning of the Fourth Amendment and Article 1, section 7 occurred when Officer Wright retained Daniel's identification to run a computer warrants check. See Butler, 795 S.W.2d

---

[7]Despite the concurring opinion's assertions, we stress that we are _not_ holding that an officer may properly approach any citizen at any time, regardless of the circumstances, and ask or demand that the citizen show identification. Indeed, such a rule could easily be abused if either adopted as a matter of course or used arbitrarily, selectively, or for the purpose of harassment. Thus, a request or demand for identification must be evaluated along with the other relevant factors set out above in determining whether there was a show of authority such that a reasonable person would have believed that compliance was required or that he or she could decline and walk away.

at 685 ("When the officer conveyed an intent to detain Riggins until everything 'checked out,' the defendant was seized within the meaning of the Fourth Amendment"); Cf. Royer, (holding that when officers took Royer to a small room, while retaining his ticket and identification, this show of authority was sufficient to transform the initial consensual encounter into a Fourth Amendment seizure); United States v. Chan-Jimenez, 125 F.3d 1324, 1326 (9th Cir. 1997) (holding that defendant was seized when officer obtained and failed to return defendant's driver's license and registration); United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995) (stating that "when law enforcement officials retain an individual's driver's license in the course of questioning him, that individual, as a general rule will not reasonably feel free to terminate the encounter"); United States v. Glover, 957 F.2d 1004, 1009 (2d Cir. 1992) (concluding that the officer's failure to return identification papers together with failure to tell defendant he was free to leave constituted seizure); Jordan, 958 F.2d at 1088 (holding that "what began as a consensual encounter . . . graduated into a seizure when the officer asked [the defendant's] consent to a search of his bag after he had taken and still retained [the defendant's] driver's license"); United States v. Winfrey, 915 F.2d 212, 216 (6th Cir. 1990) (holding that seizure occurred when officer retained defendant's keys, driver's license, and automobile registration); United States v. Low, 887 F.2d 232, 235 (9th Cir. 1989) (holding that retention of airline ticket longer than necessary for a brief scrutiny constituted a seizure); United States v. Battista, 876 F.2d 201, 205 (D.C. Cir. 1989) (stating that "once the identification is handed over to police and they have had a reasonable opportunity to review it, if the identification is not returned to the detainee we find it difficult to imagine that any reasonable person would feel free to leave without it"); United States v. Cordell, 723 F.2d 1283, 1285 (7th Cir. 1983) (holding that encounter became a detention when officer obtained defendant's driver's license and airline ticket, handed them to another officer, and told defendant they were conducting a narcotics investigation); United States v. Thompson, 712 F.2d 1356, 1359 (11th Cir. 1983)

(holding that police officer's retention of identification is indicative of a Fourth Amendment seizure); United States v. Elmore, 595 F.2d 1036, 1041-42 (5th Cir. 1979) (holding that seizure occurred when DEA agent carried defendant's airline ticket to the airline counter); Rogers v. State, 426 S.E.2d 209, 212 (Ga. Ct. App. 1992) (expressing agreement "with appellant that when [the officer] retained appellant's license, the encounter matured into an investigative stop protected by the Fourth Amendment"); State v. Frost, 374 So.2d 593, 598 (Fla. Dist. Ct. App. 1979) (holding that seizure occurred when officers retained possession of the defendant's airline ticket and driver's license); State v. Godwin, 826 P.2d 452, 454 (Idaho 1992) (holding that seizure occurred when officer retained defendant's driver's license and told defendant to remain in the vehicle); State v. Holmes, 569 N.W.2d 181, 185 (Minn. 1997) (holding that seizure occurred when officer retained possession of the defendant's college student identification card); State v. Painter, 676 P.2d 309, 311 (Or. 1984) (holding that seizure occurred where officer retained defendant's license and credit card while making a radio check); Richmond v. Commonwealth, 468 S.E.2d 708, 710 (Va. Ct. App. 1996) (holding "that what began as a consensual encounter quickly became an investigative detention once the [officer] received [appellant's] driver's license and did not return it to him"); State v. Thomas, 955 P.2d 420, 423 (Wash. Ct. App. 1998) (stating that "[o]nce an officer retains the suspect's identification or driver's license and takes it with him to conduct a warrants check, a seizure within the meaning of the Fourth Amendment has occurred"). See generally, LaFave, § 9.3, at 103 n.74 (collecting cases where courts have held that retention of a person's identification papers or other property constitutes a seizure).

## CONCLUSION

Accordingly, for the reasons stated herein, we conclude that Daniel was seized when Officer Wright retained his identification to run a computer check for

outstanding warrants. The State concedes, and we accept for purposes of this decision, that the officer lacked the reasonable suspicion necessary to justify the seizure, and that the drugs discovered as a result of the illegal seizure must be suppressed as "fruit of the poisonous tree"[8] since no intervening event or other attenuating circumstance purged the taint of the initial illegal seizure. Accordingly, we reverse the judgment of the Court of Criminal Appeals which upheld the trial court's denial of the motion to suppress, vacate the defendant's conviction, and dismiss the charge of possession of a controlled substance. Costs of this appeal are taxed against the State of Tennessee.

_____
FRANK F. DROWOTA, III
JUSTICE

**Concur:**
Anderson, C.J.
Barker, J.

**Concurring/Dissenting With Separate Opinion**
Byers, Sp. J. joined by Birch, J.

---

[8] Wong Sun, 371 U.S. at 388, 83 S. Ct.at 417.