# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 19, 2003 Session

## STATE OF TENNESSEE v. STEVE McKENZIE

### Direct Appeal from the Criminal Court for Bradley County
#### No. M-01-419     R. Steven Bebb, Judge

### No. E2002-03029-CCA-R3-CD
#### December 3, 2003

The defendant, Steve McKenzie, pled guilty to DUI, a Class A misdemeanor, and violation of the open container law, a Class C misdemeanor, and was sentenced, respectively, to concurrent sentences of eleven months, twenty-nine days, all suspended except for seven days, and thirty days, to be served on probation.  As a condition of his guilty pleas, the defendant reserved two certified questions of law: (1) whether the trial court should have dismissed the charges or ordered another preliminary hearing because the tape recording of the initial hearing was inaudible; and (2) whether the trial court erred in denying his motion to suppress evidence obtained as the result of his alleged illegal arrest.  On appeal, the defendant pursued only the second question, which the State argues is not dispositive of the charges, resulting in this matter not properly being before the court.  We agree that the certified question is not dispositive and, accordingly, dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

John P. Konvalinka and David M. Elliott, Chattanooga, Tennessee; and M. Drew Robinson, Cleveland, Tennessee, for the appellant, Steve McKenzie.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Joseph V. Hoffer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### <u>FACTS</u>

On February 19, 2001, the defendant was arrested for DUI and violation of the open container law, with the charges being bound over to the grand jury following a preliminary hearing and the defendant's later being indicted for DUI and violation of the open container law.  Subsequently, the

defendant obtained the tape recording made during the preliminary hearing and found that it was inaudible. He filed a motion for another preliminary hearing seeking, as well, suppression of evidence resulting from his alleged illegal arrest. Following a hearing, the trial court denied the motion that the defendant be given another preliminary hearing.

The trial court conducted an evidentiary hearing, as well, on the defendant's motion to suppress evidence obtained as the result of his arrest, at which Keith Callahan, the arresting officer, was the only witness. He said that he was contacted by a police dispatcher on February 19, 2001, and told that a citizen had reported an intoxicated driver who ran a stop sign and was driving erratically. The dispatcher gave him the name of the driver and the license tag number and directed him toward the driver's location. The citizen, Penny Colloms,[1] continued to be in contact with the dispatcher while she followed the defendant's vehicle. As Officer Callahan proceeded down Glenwood Road, the final location given to him, he was flagged down by Ms. Colloms, who informed him that she was the person who called the police. She said that she had followed the vehicle sitting in a particular driveway, where the driver had gotten out of the vehicle and gone into the carport. This was the first time that Officer Callahan saw the defendant, and he also recalled that Ms. Colloms may have told him that the defendant's driving was erratic. After speaking with Officer Callahan, Ms. Colloms left the scene. Callahan said that he had not used his blue lights as he responded to the call from the dispatcher.

Officer Callahan said it was dark when he first observed the defendant; and no lights were on in the carport. The defendant was about fifty feet from the vehicle, which had a license tag number matching that relayed by the dispatcher. After he walked down the driveway, Callahan determined that neither the engine nor the lights of the defendant's car were on, although the hood was still hot.

Officer Callahan had a brief conversation with the defendant, telling him that he was there to investigate a call about his driving. He asked to see the defendant's identification, observing that he was unstable on his feet and leaning on a rail. Callahan observed that the defendant was holding a cup and spilling its contents as they talked. Asked what was in the cup, the defendant responded that it contained rum and coke. When asked if the car in the driveway was his and whether he had driven it to that location, the defendant answered affirmatively. Officer Callahan observed that the defendant's speech was slow and slurred, and his eyes were red and glassy. As to the defendant's ability to think, Officer Callahan responded, "Any questions asked he seemed to be very, very, slow. He would actually have to stop. And you could actually, I mean, excuse my pun, almost see the wheels turning, him actually having to collect the thoughts before he could speak." Callahan said that he did not engage in any conduct that would have led the defendant to believe he was under arrest.

---

[1] At various places in the record, the citizen's last name is said to be "Collins" or "Colloms." We have adopted the latter spelling because it is used by both parties in their briefs.

While in the carport, Officer Callahan administered four field sobriety tests to the defendant, not advising him of his <u>Miranda</u> rights or placing him under arrest. He first administered the horizontal gaze test, which he had to explain to the defendant several times. Callahan said that, during the A-B-C test, the defendant missed the letters G, L, and M and kept starting over, despite requests to finish. The defendant had a hard time comprehending the finger count test, which was explained to him at least four times. Callahan described the defendant's problems with the test: "He could not get his thumb to his fingers, if he could he would say one [or] three, and then would not even get all four numbers out." When asked to stand on one leg, the defendant said he could not perform the test. Officer Callahan said that he only administered four, rather than the usual five, field sobriety tests because the defendant said he could not continue. Callahan then arrested the defendant for DUI and violation of the open container law. Patting the defendant down, Officer Callahan found the keys to the defendant's car in his front left pocket.

Following the hearing, the trial court found that the arrest of the defendant was lawful and, subsequently, the defendant entered guilty pleas for DUI and violation of the open container law. As part of this plea, he reserved certified questions of law for appeal as to whether he was entitled to another preliminary hearing and whether the trial court erred in determining that his arrest was lawful.

## ANALYSIS

The defendant's motion to suppress sought to have "his arrest . . . declared illegal and all fruits thereof suppressed." The trial court's written order denying the motion to suppress found, in part, as follows:

> This cause came to be heard on March 28, 2002, upon the defendant's motion to suppress evidence obtained after an illegal arrest. This Court finds that the defense motion is without merit. This Court specifically finds that for the purpose of the hearing there was sufficient evidence that the defendant was intoxicated to provide Officer Callahan with legal grounds to arrest the defendant. Additionally, this Court finds that the Cleveland Police Department could have been subject to civil liability if the defendant was not arrested and the defendant proceeded to cause an automobile accident after coming into contact with Officer Callahan. Finally, this Court also finds that this arrest is akin to a "citizen's arrest" pursuant to TCA 40-7-109 and TCA 40-7-113.

The State argues on appeal that the defendant's certified question is not dispositive, resulting in the defendant's appeal not properly being before this court. The defendant's motion, the State asserts, sought to suppress evidence resulting from his illegal arrest, and the trial court was asked to determine only whether the defendant was lawfully arrested, not when he was "seized." Without this determination, according to the State's argument, it cannot be ascertained whether the

-3-

defendant's admissions, that he had been drinking rum and coke and had just driven into the driveway, would be suppressed even if the arrest were illegal. Responding to this argument, the defendant asserts that he was arrested when "essentially 'cornered' by Officer Callahan and ordered to step away from the door and come to him for questioning." According to the defendant, "[n]o reasonable person would feel free to simply disregard the officer in this situation and go about his business." Additionally, he argues that Officer Callahan did not have a basis for coming down the driveway to the carport, saying that Callahan did so "for no other reason than to search and seize the [defendant] without a warrant."

In our review of this issue, we first will consider the defendant's argument that Officer Callahan was not entitled to enter the property of the defendant's ex-wife. Since Callahan was the only witness at the suppression hearing, the record contains no proof as to why the defendant was in the driveway of his ex-wife, whether, for instance, he had been invited, or was an unwelcome or unexpected visitor. Thus, the defendant's problem in arguing that Officer Callahan had no right to come down the driveway is that the defendant did not first establish that he had standing to object to the entry onto the premises by the officer. State v. Oody, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) ("One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place where property is searched."). Accordingly, the defendant cannot now complain that Officer Callahan could not come onto the premises for he, himself, did not establish any basis for being on the property, other than that his ex-wife resided there. Thus, the defendant failed to establish that he had a legitimate expectation of privacy in the premises.

On appeal, the defendant argues that Officer Callahan was not entitled to arrest him based upon information from Penny Colloms because he "did not undertake any analysis to determine [her] reliability as an informant. . . . [H]e did not know [her] and was not familiar with her name or anything about her."

Our supreme court explained in State v. Stevens, 989 S.W.2d 290 (Tenn. 1999), the reasons why information received from a citizen differs from that from an informant:

> "[A]n ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied."

Id. at 294 (quoting State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993)).

-4-

Officer Callahan had learned from the dispatcher that Penny Colloms said she had observed the defendant driving in such a manner that he appeared to be intoxicated, and she was following him. Callahan went to the location she gave, spoke briefly with her, and then walked down the driveway to speak with the defendant. Under these circumstances, there is no basis for our concluding that Ms. Colloms was not as the court described in Stevens, an ordinary citizen who was a witness to a crime and expected no gain or concession for the information she gave. Accordingly, it was unnecessary for Officer Callahan to determine her reliability otherwise before approaching the defendant.

Next, we will ascertain whether the admissibility of the defendant's statements to Officer Callahan was dependent upon the legality of the arrest, the defendant contending that he was 'in custody" from the time that Callahan approached him.

In State v. Daniel, 12 S.W.3d 420 (Tenn. 2000), our supreme court reviewed the varying types of interactions which may occur between a law enforcement officer and a citizen:

> [C]ourts have recognized three distinct types of police-citizen interactions: (1) a full scale arrest which must be supported by probable cause; (2) a brief investigatory detention which must be supported by reasonable suspicion; and (3) brief police-citizen encounters which require no objective justification. While arrests and investigatory detentions implicate varying degrees of constitutional protection, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

Id. at 424 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968)).

Quoting Florida v. Bostick, 501 U.S. 429, 440, 111 S. Ct. 2382, 2389, 115 L. Ed. 2d 389 (1991), the Daniel court explained how the nature of an encounter may be recognized: "'In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter.'" 12 S.W.3d at 425.

In making this determination, the following factors should be considered:

> Some of the factors which are relevant and should be considered by courts when applying this totality of the circumstances test include the time, place and purpose of the encounter; the words used by the

officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen.

Id. at 425-26.

The court in Daniel then applied the considerations to the facts being reviewed in that matter, concluding that "social pressure" to cooperate with a law enforcement officer did not transform an encounter into a seizure:

> [W]e conclude that Officer Wright's conduct in merely approaching the defendant, inquiring what was going on, and asking to see Daniel's identification did not constitute a seizure as that term is defined in the constitutional context. Although the evidence in the record is minimal, it appears that the initial encounter was not accompanied by physical force or a show of authority. There was no evidence that Officer Wright either drew a weapon, ordered Daniel to stop and answer questions, or demanded that Daniel produce identification. Moreover, there was no evidence that Wright physically restrained Daniel, instructed him not to walk away, or blocked his path. The encounter did not become a seizure simply because Daniel may have felt inherent social pressure to cooperate with Officer Wright.

Id. at 426-27 (footnote omitted).

Subsequently, applying the totality of the circumstances standard to a situation in which an officer pursued a fleeing suspect, the court determined in State v. Randolph, 74 S.W.3d 330 (Tenn. 2002), that the defendant was "seized" when first commanded to halt:

> [E]ven though Officer Harrington did not initially draw a weapon or make physical contact, we conclude that Randolph was "seized" when the officer made a show of authority by activating the blue lights on his patrol car and instructing him to stop. See State v. Daniel, 12 S.W.3d at 426 ("verbally orders a citizen to stop and answer questions"); State v. Binette, 33 S.W.3d [215,] 218 [Tenn. 2000] ("Upon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop. . . ."); State v. Pulley, 863 S.W.2d [29,] 30 [Tenn. 1993] ("When an officer turns on his blue lights, he or she has clearly initiated a stop."). In sum, in view of all of the circumstances, a reasonable person would have believed he was not free to leave the scene or walk away from

the officer. Accordingly, we hold that the defendant was "seized" for the purpose of article I, § 7 of the Tennessee Constitution and that the trial court was correct in suppressing the evidence.

Id. at 338 (footnote omitted).

Officer Callahan testified that he was alone, had not activated his blue lights, and spoke to the defendant in a conversational tone. Callahan had not drawn his weapon or touched the defendant. Accordingly, we conclude that the defendant had not been "seized" as Callahan talked with him. Thus, the defendant's admissions that he was drinking rum and coke and had driven the vehicle into the driveway, as well as Callahan's observations of the defendant's slurred speech and difficulty in standing, all occurred before Callahan administered the field sobriety tests which, themselves, preceded the defendant being told that he was under arrest. In view of this finding, we next will determine whether, as the State argues, the certified questions are not dispositive of the charges, resulting in the appeal not being properly before the court.

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

> (i) the defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive

of the case, and the following requirements are met: (A) the judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review; (B) the question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved; (C) the judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and (D) the judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case;

> . . . .

> (iv) the defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case, and the requirements of subsection (i) are met, except the judgment or document need not reflect the state's consent to the appeal or the state's opinion that the question is dispositive.

Tenn. R. Crim. P. 37(b)(2)(i), (iv).

In State v. Preston, 759 S.W.2d 647 (Tenn. 1988), our supreme court explained the conditions which a defendant must meet to properly preserve an issue of law pursuant to Rule 37:

This is an appropriate time for this Court to make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv). Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

Id. at 650.

In the present appeal, the DUI judgment form states, "The certified question of law for the purpose [of] the appeal is attached hereto and incorporated herein as exhibit 'A,'" and a "Statement of the Certified Questions of Law Pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure to be Inserted into the Judgment of Conviction" was attached to the judgment. The statement, filed the same day the judgment was filed, provides: "These questions are expressly reserved with the consent of the state and the trial judge. The Defendant, the State and the Trial

Judge are of the opinion that each of the certified questions are [sic] dispositive of the case." The certified questions as they appear in this statement are as follows:

> Whether the Court erred in denying Defendant's Motion for [a] Preliminary Hearing filed on or about November 19, 2001. The scope and limits of the legal issues reserved are as follows: whether the [charges] should have been dismissed, or another preliminary hearing should have been held, for the failure of the audio recording at the preliminary hearing in violation of Rule 5.1(a) of the Tennessee Rules of Criminal Procedure.

> Whether the Court erred in denying Defendant's Motion to Suppress filed on or about November 19, 2001, and any issues related thereto. The scope and limits of the legal issues reserved are as follows: (1) whether the Court erred in denying the motion in holding that the arrest was "akin to a 'citizen's arrest'"; and (2) whether the Court erred in denying the motion in holding that the arrest fit into an exception to the warrantless arrest statute, Tenn. Code Ann. § 40-7-103.

We conclude that the second certified question, which is the only one pursued on appeal, is not dispositive of the case. Officer Callahan said that the defendant's arrest occurred after he had observed the defendant was intoxicated, and the defendant had said he was drinking rum and coke and admitted he had driven the vehicle into the driveway. Thus, the State could proceed, even if the arrest were illegal, unless the additional determination were made that the evidence obtained by Callahan before the arrest must be suppressed because of the illegal arrest.[2] However, the trial court was not asked to determine if the defendant was "seized" when first approached by Officer Callahan or what evidence would be suppressed if the arrest were illegal. Accordingly, even if we agree that the arrest were illegal, we then would remand the matter to the trial court. As a result, we conclude that the certified question is not dispositive and, thus, this appeal is not properly before this court.

Accordingly, the appeal is dismissed.

---

[2]In his reply brief, the defendant, citing Daniel, 12 S.W.3d at 428, argues that "[s]hould the Court rule that [the] Trial Court erred in denying the Motion to Suppress, all of the evidence against the Appellant would be 'fruit of the poisonous tree' and the conviction against Appellant must be vacated and the charges dismissed." In Daniel, our supreme court determined that the officer did not have probable cause to "seize" the defendant by retaining his identification to run a computer check for outstanding warrants. Accordingly, the marijuana, found on the defendant's person as he was searched pursuant to his arrest, was suppressed and the charges dismissed. By contrast, in the present appeal, evidence was obtained from the time of first contact between the officer and the defendant. However, the trial court was not asked to sort out which evidence would be suppressed if the arrest was determined to be illegal.

_____
ALAN E. GLENN, JUDGE