IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 13, 2005 Session

## STATE OF TENNESSEE v. STEPHANIE ANN MAYS

**Appeal from the Circuit Court for Obion County**
**No. 4-372     William B. Acree, Jr., Judge**

_____

**No. W2005-00575-CCA-R3-CD  - Filed December 7, 2005**

_____

The State appeals the suppression of evidence by the Obion County Circuit Court.  The Defendant, Stephanie Ann Mays, was arrested for criminal trespass, and a search of Mays' person followed, which revealed the presence of a quantity of cocaine and marijuana.  After an evidentiary hearing, the trial court granted Mays' motion to suppress and dismissed the charges.  The State argues that because the police had probable cause to arrest Mays, the resulting search and seizure of the evidence was valid.  After review, we conclude that Mays' arrest for trespass, which was based upon an erroneously generated police document, was invalid as no probable cause existed to arrest.  As such, the evidence was properly suppressed.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the Appellant, State of Tennessee.

James T. Powell, Union City, Tennessee, for the Appellee, Stephanie Ann Mays.

**OPINION**

**Factual Background**

On August 23, 2004, Union City Police Officer Shawn Palmer was on routine patrol of East Gate Village, a public housing complex, when he observed the Defendant on the premises.  Earlier that morning, Officer Palmer had reviewed East Gate Village's "barred list" and recalled that the Defendant's name was on the list.  Upon encountering the Defendant, he questioned her presence on housing authority property due to her barred status.  The Defendant responded that she was not barred as her name had been removed from the list.  To confirm this fact, the Defendant used her cell

phone to call the housing authority office. After the Defendant heard a female voice on the phone, she handed the phone to Officer Palmer. The person, later identified as Ann Oliver with the Union City Housing Authority, informed Palmer that "according to our list we have, she is still barred." At this point, the Defendant was arrested for criminal trespass, and a search of her person was conducted. The search revealed the presence of 6.5 grams of cocaine, in addition to a small amount of marijuana.

The Defendant was subsequently indicted for felony possession of .5 grams or more of cocaine with intent to sell and simple possession of marijuana. An evidentiary hearing was conducted on the Defendant's motion to suppress based upon grounds that no probable cause existed for her arrest; therefore, the resulting search and seizure of the evidence was unlawful. The proof at the hearing established that on the date of the Defendant's arrest for criminal trespass, August 23, 2004, her name had been removed from the names of those barred from entry onto East Gate Village property. Further proof established that because of police errors or omissions, the police generated "barred list" which was distributed to the patrol officer had not been updated and was, therefore, incorrect. In suppressing the evidence, the trial court concluded:

> Mr. Palmer was looking at a list dated January 30, 2003. This was August 23, 2004, a very long time after that list was compiled, and it would seem to me that, with Officer Palmer's familiarity with the process at East Gate Village, if he didn't know, he should have known that, in all likelihood, he had an old list.

This State appeal followed.

## Analysis

On appeal, the State asserts that the trial court erred in granting the Defendant's motion to suppress on the grounds that Officer Palmer lacked probable cause to arrest. Specifically, the State asserts that when Palmer conducted an investigatory stop, he had reasonable suspicion that the Defendant was trespassing based upon the inclusion of her name on a list of individuals barred from the housing authority property. This reasonable suspicion, the State argues, developed into probable cause when the housing authority confirmed the Defendant's status as a barred person. Because the arrest was lawful, the State argues that the resulting search and seizure was also lawful as it was made incident to the arrest.

The facts of this case are not in dispute. The State argues only that the trial court's application of the law to the facts is incorrect. This court reviews the trial court's application of the law to the facts under a *de novo* standard of review without deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). It is conceded that if the arrest was lawful, the search incident to the arrest was also lawful. Accordingly, the dispositive issue is whether the erroneous "barred list" provided probable cause, or at a minimum, reasonable suspicion to stop the Defendant. It cannot be contested that Officer Palmer's stop of the Defendant restrained

her liberty, and, as a result, a seizure within the meaning of the Fourth Amendment and Article 1, section 7, of the Tennessee Constitution occurred. *State v. Daniel*, 12 S.W.3d 420, 425 (Tenn. 2000).

At the hearing, the proof established that the procedure for barring a person from East Gate Village, a public housing complex which is managed by the Union City Housing Authority, is police initiated. Union City Police Chief Joe Garner described the procedure as a community policing partnership between the Union City Police Department and the Union City Housing Authority. He explained:

> if someone has been involved in drug dealing, is convicted of a serious crime, or is causing a problem in the area, the officer can issue a citation, telling them not to be on the property. At that time, they fill out an incident report which comes in recommending what action they feel, such as barring from the area. Once that's signed off on, it's sent to the housing authority and East Gate Village management for their approval or disapproval.

After the housing authority grants approval for the person to be barred from public housing premises, the police department is informed of this fact, and the name is placed on the "barred list" by the police. To be removed from the "barred list," the person barred must file a written request with both East Gate Village and the Union City Housing Authority. If approval is granted, the name is submitted to the Union City Police Chief for approval.

Chief Garner testified that he "had an application date on [the Defendant] of March 17, 2003" for removal from the East Gate Village's barred list. The Defendant had obtained the removal form, and representatives of the Union City Housing Authority, as well as East Gate Village, had noted their approval. The form reached Chief Garner by May 8, 2003, and he approved the Defendant's removal that same day. The barred list for East Gate Village was revised on February 17, 2004, and the Defendant's name was removed from the list. Chief Garner, however, could not speculate as to whether this list was ever distributed but hypothesized that the lists were not distributed due to a clerical error. He testified, "there was no way to determine if there was distribution to the housing authority, or if they used an old list."

The proof at the hearing established that when Officer Palmer arrested the Defendant on August 23, 2004, he was relying on a nineteen-month-old "barred list" which had been updated seven months before the Defendant's name was removed. The Defendant was arrested because information had been retained in the system when it was no longer valid. This matter was within the responsibility and control of the police department who failed to update its records to accurately reflect the Defendant's status. To validate the Defendant's arrest in this case would sanction inefficiency and permit the police to rely on an error of their own making. The State's argument that the officer had reasonable suspicion, as opposed to probable cause, to stop the Defendant based upon the "barred list" is not persuasive as the information on the list was erroneous from the inception and thus insufficient to support a stop based upon either reasonable suspicion or probable cause.

We conclude that the Defendant's arrest, which was made in reliance upon an inaccurate police generated "barred list," was made without probable cause and was invalid. Thus, any subsequent search incident to the unlawful arrest was also invalid.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court granting Defendant Mays' motion to suppress is affirmed.

_____
DAVID G. HAYES, JUDGE