IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 17, 2007 Session

## STATE OF TENNESSEE v. ANTONIO DEWAYNE WATERS

**Direct Appeal from the Criminal Court for Sumner County**
**No. 661-2004     Jane Wheatcraft, Judge**

---

**No. M2006-01468-CCA-R3-CD - Filed September 21, 2007**

---

The defendant, after denial of his motion to suppress evidence, entered a plea of guilty to possession with intent to sell more than one-half gram of cocaine, a Class B felony. The negotiated sentence was eight years as a standard offender. The defendant appeals pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(I). After review, we conclude that denial of the motion to suppress was error. Accordingly, we reverse the conviction and dismiss the charges.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Joseph E. Clifton, Nashville, Tennessee, for the appellant, Antonio Dewayne Waters.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Lawrence Ray Whitley, Jr., District Attorney General; and Dee David Gay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual History

Testimony by the arresting officers at the suppression hearing provided the following account of the defendant's arrest.

Deputy Theodore Loftis, Sr., of the Sumner County Sheriff's Department, was patrolling with a reserve trainee deputy, Kevin Brewer, on April 6, 2004. The deputies were on the Hendersonville Bypass when they observed a pedestrian, the defendant, near the Sandersville Road exit at approximately 4:12 p.m. The defendant was talking on a cell phone when Deputy Loftis activated his blue lights and stopped to question the defendant. The defendant told Deputy Loftis that he was

speaking with his attorney and asked if Deputy Loftis wanted to talk with the attorney. Deputy Loftis replied that he "didn't need to talk to Johnny Cochran" and ordered the defendant to terminate his phone conversation. In response to Deputy Loftis' questions, the defendant stated he had no identification and gave varying answers as to how he had arrived at the scene. When asked if he had a weapon, the defendant said he did not and pulled money and a cigar from his pocket. Deputy Loftis decided to pat the defendant down for weapons and placed a hand on the defendant's shoulder. The defendant then broke away and ran. The deputies pursued and saw the defendant discard two packages that were later found to contain cocaine. Deputy Brewer was able to catch the defendant, administered pepper spray to overcome the defendant's resistance, and then handcuffed him. Deputies Loftis and Brewer were the only witnesses at the suppression hearing, and the facts related were undisputed.

The trial judge found that the officers had acted properly and overruled the defendant's motion to suppress.

## Standard of Review

In reviewing a trial court's ruling on a pretrial suppression motion, all issues of credibility, weight and value of the evidence, and resolution of evidentiary conflicts are entrusted to the trial judge, and findings of fact must be upheld unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The reviewing court is not bound by the trial judge's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). Our review is de novo if applying law to undisputed facts. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

## Certified Question of Law

The State, in its reply brief, contends that the defendant failed to state with sufficient specificity the certified question of law, thus depriving this court of jurisdiction. We respectfully disagree.

The requirements for reserving a certified question of law are presented in State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), and State v. Pendergrass, 937 S.W.2d 834, 835 (Tenn. 1996), and are incorporated in Tennessee Rule of Criminal Procedure 37(b). The State argues that the defendant failed to specifically "identify clearly the scope and limits of the legal issue reserved," as required in Tennessee Rule of Criminal Procedure 37(b)(2)(A)(ii). The requirement was illustrated in Preston.

> [T]he final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified

question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

759 S.W.2d at 650.

The Judgment contained the following language intended to preserve the certified question: Plea entered pursuant to Rule 37 where this issue is dispositive and preserved as a certified question of law for appeal. The question of law preserved for appeal is whether the evidence siezed [sic] from the defendant should have been suppressed because of the warrantless arrest of the defendant not supported by probable cause. See attached order included by reference as part of this judgment.

An Agreed Order was attached to the judgment and signed by the parties and the trial judge. The Order contained language as follows:

The question of law preserved for appeal is whether the evidence seized from the defendant in this case should have been suppressed because it was seized pursuant to the warrantless arrest of the defendant for which the police had no probable cause in violation of the 4th Amendment to the United States Constitution and Article One, Section Seven of the Tennessee Constitution as well as the Tennessee Supreme Court's decision in State of Tennessee v. Perry Thomas Randolph, 74 S.W.3d 330 (Tenn. 2002).

In addition to all parties consenting to the preservation of this issue for appeal, all parties, including the Trial Judge and the State, are of the opinion that this question is dispositive of the case, . . .

Appellate courts are not bound to accept as dispositive certified questions stipulated as such by the parties and the trial court. Preston, 759 S.W.2d at 651. In this case, we agree that the lack of admissibility of this evidence would be dispositive in all respects. We conclude that the defendant has articulated and identified the issues in clear enough language to satisfy the mandatory requirements of Tennessee Rule of Criminal Procedure 37(b) and Preston.

Analysis

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect our citizens from unreasonable searches and seizures. The essence of this protection under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967). "Article I, § 7 is identical in intent and purpose with the Fourth Amendment." Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968). Our Supreme Court has extended greater privacy protections to citizens by its interpretation of Article I, section 7 of the Tennessee Constitution. See State v. Randolph, 74 S.W.3d 330 (Tenn. 2002). In determining

-3-

whether a seizure has occurred, Tennessee adheres to a totality of the circumstances standard, that is, if in the view of all the circumstances, a reasonable person would have believed that he or she was not free to leave. Id. at 336.

> Several factors have been identified as relevant to the totality of circumstances test: the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen.

State v. Daniel, 12 S.W.3d 420, 425-26 (Tenn. 2000).

Also in Daniel, several police encounters were listed which are generally held to constitute "seizure":

> if an officer: (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier responded fully to police inquiries; (4) verbally orders a citizen to stop and answer questions; (5) retains a citizen's identification or other property; (6) physically restrains a citizen or blocks the citizen's path; (7) displays a weapon during the encounter.

Id. at 426 (citing 4 Wayne R. LaFave, Search and Seizure, § 9.3(a), at 104 (3d ed. 1996 & Supp. 1999)).

When a police officer activates the blue lights of a vehicle, he has clearly initiated a stop and has seized the subject of the stop. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

Under both the Fourth Amendment and Article I, section 7 of the Tennessee Constitution, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). One exception is "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Binette, 33 S.W.3d at 218.

The defendant in this cause was near a public road, engaged in nothing more suspicious than a cell phone conversation. The officers conducting the stop were not investigating any criminal activity in which the defendant might have been a suspect. Past Supreme Court decisions have made it clear that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382 (1991). A more expansive statement of this rule stated:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is

willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

Florida v. Royer, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (citations omitted).

The State suggests that the officers were acting in their capacity as a "community caretaker" to render assistance to the defendant. Such actions are justifiable and laudable so long as the aid is actually needed or sought by the citizen. Otherwise, it is merely a guise for unwanted official intrusion into the privacy of the affected citizen. It is instructive to note that the second count of the indictment charged the defendant with flight "while knowing that said officer was attempting to arrest him."

State v. Randolph involved the investigation of a possible burglary in progress. The officer drove to the neighborhood of the suspected burglary and saw the defendant riding a bicycle. The officer activated his blue lights and told the defendant to stop. The defendant kept riding in spite of a repeated demand by the officer to stop. After a pursuit, the officer found the defendant and observed him discard a shotgun and two boxes of ammunition. These items and a phone in the defendant's possession were later identified as having been stolen in the burglary. The Supreme Court held that the defendant was seized when the officer activated the blue lights, ordered the defendant to stop, and pursued the defendant. Because the officer lacked probable cause to effect a seizure, the evidence was properly suppressed. 74 S.W.3d at 330.

The case of State v. Nicholson, 188 S.W.3d 649 (Tenn. 2006), involved a defendant who happened upon a scene where officers were investigating for possible gang activity. Prior to the defendant's appearance, the officers had unsuccessfully attempted to chase and apprehend suspects in that area. The defendant, when told to "hold up," turned and ran away. The officer pursued the defendant and ordered, "stop, police." The Supreme Court held that this constituted a seizure without specific and articulable facts to provide a reasonable suspicion to seize the defendant. The Court recognized that flight does not always amount to a reasonable suspicion. Id. at 261.

Returning to the case at hand, we conclude that the defendant was seized by the activation of the blue lights and the command to the defendant to terminate his phone conversation. Neither officer testified that the activation of the blue lights on the marked patrol car was done for public safety purposes or that it was necessary. Instead, the officers' course of action, both in activating the blue lights and in subsequent actions, suggested conduct intended to exert control over the defendant. The fact that the defendant gave conflicting accounts of how he arrived at a public location was irrelevant in that he had no obligation to answer or submit to these questions. The officers had not observed the commission of a crime and had no reasonable suspicion that a crime was about to be

committed. The improper seizure mandates the suppression of the subsequently found evidence. The State contends that the evidence is admissible as either "abandoned property" or by the "plain view" doctrine. Neither doctrine is applicable when the evidence is abandoned or in plain view due to prior police misconduct. State v. Brenda Hill, No. 274 (Tenn. Crim. App. at Knoxville, Aug. 7, 1990), 1990 Tenn. Crim. App. LEXIS 526, at *4, appeal denied (Tenn. Oct. 22, 1990). The evidence in this case was tainted by the illegal police action, and its subsequent discovery was the fruit of a poisonous tree. Wong Sun v. U. S., 371 U.S. 471, 484-86, 83 S. Ct. 407, 415-16 (1963).

## Conclusion

After review, we conclude, based on the totality of the circumstances, that the seizure of the defendant was violative of the defendant's rights under Article I, section 7 of the Tennessee Constitution. Denial of the motion to suppress was in error. Therefore, we reverse the conviction and dismiss the charges against the defendant.

_____
JOHN EVERETT WILLIAMS, JUDGE