# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 16, 2003 Session

## STATE OF TENNESSEE v. CHRISTOPHER ROBERT SMITH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-C-1351      Steve Dozier, Judge**

---

**No. M2002-03128-CCA-R3-CD - Filed Janaury 23, 2004**

---

The Appellant, Christopher Robert Smith, was convicted by a Davidson County jury of possession with intent to deliver over 300 grams of cocaine, a class A felony. Following this conviction, he was sentenced to twenty-one years imprisonment. Smith appeals, arguing that (1) the trial court erred by denying his motion to suppress and (2) the trial court improperly admitted evidence of prior criminal conduct. After a review of the record, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Cynthia M. Fort, Nashville, Tennessee, on appeal, for the Appellant, Christopher Robert Smith.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Tammy Meade and John Zimmerman, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

In March of 2000, agents of the 20th Judicial District Drug Task Force received information that the Appellant and Christopher Robert Agee were involved in a major cocaine distribution ring between Texas and Nashville. During the investigation, Agent Jose Ramirez, a Metro police officer assigned to the Drug Task Force, learned that the two men rented cars from Dollar Rent-A-Car at the Nashville International Airport and would then drive to Texas to buy drugs. Ramirez discovered that the Appellant had rented a maroon Lincoln Town Car, license number ARU051, on March 20, 2000, and returned the vehicle on March 27, 2000. During this time, the rented vehicle was driven

2,274 miles.  On the 27th, the Appellant rented another vehicle, a white Dodge Intreprid, license number 558UCQ.

Sergeant James McWright, also assigned to the Drug Task Force, was involved in the investigation of the Appellant and participated in the surveillance of his apartment at 5825 Crossings Boulevard, Apartment 710, in Antioch.  Sergeant McWright routinely conducted surveillance of the Appellant's Antioch apartment.  "During March," Sergeant McWright observed the Lincoln Town Car parked in front of the Appellant's apartment.  On April 1, 2000, at approximately 7:30 p.m., he drove by the apartment and did not see any lights on at that time.  Later, he returned to the apartment, saw lights on, and saw the white Dodge Intrepid in the parking lot.  Sergeant McWright and several other officers then set up continuous surveillance of the apartment.

During the surveillance, the officers observed Leslie Bennion arrive at the apartment.  While Bennion was inside, Sergeant McWright ran a registration check of Bennion's license plate and determined that Bennion was on parole for selling cocaine in 1997.  Bennion then left the apartment and was followed by Officer Mike Garbou, who stopped Bennion after he committed a traffic violation.  A drug dog "alerted" to the presence of narcotics, and Bennion was arrested.  "[A] quarter-pound of cocaine, that looked like it had just [come] off a kilo brick" was found inside Bennion's vehicle.

As a result of the search of Bennion's car, Agent Ramirez was sent to obtain a search warrant for the Appellant's residence.  While the officers were waiting for the search warrant to arrive, a police drug dog was escorted around the Dodge Intrepid, and the dog "alerted" to the presence of a narcotic odor.  The officers then saw Agee "come out of the apartment, run down the steps, and peer out into the parking lot.  He ran to the other end of the breezeway and looked around the parking – or looked out toward the – the highway.  He was barefooted[.]"  Believing Agee had been "tipped off" that Bennion had been stopped, Sergeant McWright ordered Agee's arrest.  Because of the late hour, the cool weather, and the fact that Agee was barefooted, the officers returned Agee to the unlocked apartment and placed him on the sofa.  The officers then woke the Appellant, escorted him to the living room, and sat him on the sofa next to Agee.  At this time, Sergeant McWright *Mirandized* the Appellant.

Following issuance of the search warrant, a search was conducted of the premises.  The search led to the seizure of approximately 5 pounds of cocaine, cash, a hand gun, paraphernalia, and marijuana.  Most of the cocaine, a loaded handgun, and $4,000 cash were found in Agee's bedroom.  According to McWright, the Appellant knew the amount of the money even though it was located under Agee's mattress.  A plate with cocaine residue was found under the sofa in the living room.  Inside a kitchen cabinet, officers found a small amount of cocaine, a small amount of marijuana, electronic scales with cocaine residue, food savers that could be vacuum sealed to avoid the detection of drug-sniffing dogs, straws for snorting cocaine, and a grinder used for grinding cocaine into powder.  Also, inside the Dodge Intrepid, officers located a receipt, dated April 1, for a purchase at the Williams Travel Center in Robinson, Texas.

According to McWright, Agee stated that the cocaine belonged to him but insisted that the gun was not his. Sergeant McWright then took the Appellant into the bedroom so he could put his shoes on, and the Appellant said, "he couldn't turn on the Mexicans, 'cause they knew where his family lived and that they would kill him. He said that he owed the Mexicans more than a hundred-thousand dollars for the cocaine that we had seized from him."

On July 25, 2000, the Appellant and Agee were indicted for possession with intent to deliver over 300 grams of cocaine and money laundering. The Appellant and Agee filed a motion to suppress the search of the residence, which was denied.[1] After a trial by jury, the Appellant was acquitted of money laundering but was found guilty of possession with intent to deliver over 300 grams of cocaine, a class A felony. Following a sentencing hearing, the Appellant received a sentence of twenty-one years to be served consecutively to a prior drug offense. This timely appeal followed.

## ANALYSIS

### I. Motion to Suppress

First, the Appellant argues that the trial court erred by denying his motion to suppress the evidence discovered during the search of his apartment. Specifically, he contends that:

> the affidavit in support of the search warrant did not provide facts necessary to support a finding of a nexus between the apartment to be searched and the evidence sought. The affidavit merely describes previous encounters that the officer had with [the Appellant]. The affidavit also contains three different addresses purported to be linked to [the Appellant]. There is no information in the affidavit supporting the inference of [the Appellant's] being at The Crossings Boulevard apartment with drugs or any other illegal substances. Further, the affidavit asserts that a white male was seen leaving the apartment; however, he was not seen carrying anything into the residence or out of the residence. Thus, the fact that he was at some point in the evening at this apartment is not a fact that should be relied upon to provide evidence of the nexus between the apartment and criminal activity.

The trial court, in a very detailed order, denied the Appellant's motion to suppress the evidence found inside the apartment, concluding that the search warrant was supported by probable cause.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)); *see also State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). Indeed, questions of credibility of the witnesses, the weight and value of the evidence,

---

[1]It appears from the record that, thereafter, in April 2001, the Appellant and the co-defendant's cases were severed.

and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. *Daniel*, 12 S.W.3d at 423; *see also State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable inferences that may be drawn from that evidence. *Binett*e, 33 S.W.3d at 217 (quoting *Odom*, 928 S.W.2d at 23). If the evidence does not involve questions of credibility, the reviewing court must examine the record *de novo* without a presumption of correctness. *Id.* Notwithstanding the nature of the proof, the application of the law to the facts remains a question of law that requires *de novo* review. W*alton*, 41 S.W.3d at 81; *Daniel*, 12 S.W.3d at 423. Here, since no testimony was presented at the suppression hearing, the trial court's ruling, premised solely upon the search warrant and supporting affidavit, was one of law. *State v. Gilbert*, No. 01C01-9311-CC-00383 (Tenn. Crim. App. at Nashville, Mar. 3, 1995).

The search warrant and accompanying affidavit were not introduced and never became a part of the record, neither at trial nor on appeal. If the findings are incomplete and/or the record is insufficient, *de novo* review will have relatively little benefits when the issue presented is of an extremely fact-bound nature. *State v. Waylon D. Knott*, No. M2000-02524-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 27, 2001 (citing *Ornelas v. United States*, 517 U.S. 690, 700-01, 116 S. Ct. 1657, 1664 (1996) (Scalia, J., dissenting)). The trial court's order denying the Appellant's motion to suppress does contain several references to portions of the affidavit. However, these references are prefaced with the following language, "The <u>relevant portions </u>of the affidavit in support of the search warrant for the property listed at 5825 Crossings Boulevard, apartment 710 are <u>summarized</u> as follows." (emphasis added). The search warrant and accompanying affidavit do not appear in the trial record. We are unable to find any part of the transcript where any attempt was made to insure the presence of the document in the event of appellate review.[2]

*De novo* review is permitted to prevent a miscarriage of justice resulting from the legal determination of a single judge. *Waylon D. Knott*, No. M2000-02524-CCA-R3-CD. Thus, if the record is incomplete, an appellate court is prevented from completing any meaningful review of the law applicable to those pertinent facts. This is precisely the situation in the case before this court.[3]

---

[2]On June 30, 2003, a motion was filed with this court to supplement the record to include the "[o]rder denying the motion to suppress and the search warrant affidavit[.]" This motion was granted. However, only the order denying the motion to suppress the evidence was included in the supplement to the record.

[3]We note that, based upon the facts as presented in the trial court's order, the affidavit does establish probable cause for the issuance of a search warrant. The trial court made the following relevant findings:

It can clearly be inferred from the affidavit that the police knew the defendants were involved in a major distribution ring of cocaine. The defendants both made statements to Sgt. McWright previously concerning their operation and how they transported illegal narcotics from Texas. The affidavit also states that a confidential informant advised the affiant that the defendants would rent vehicles for the purpose of driving to Texas to acquire narcotics. Additionally, the defendants were in possession of a rental car that a drug detection dog positively alerted on for the odor of narcotics. The affiant also explained that he verified that this vehicle had been rented a few days before by

(continued...)

Moreover, it is the duty of the Appellant to prepare a record that presents a complete and accurate account of what transpired in the trial court with respect to the issue on appeal. Tenn. R. App. P. 24(b); *State v. Johnson*, 854 S.W.2d 897, 902 (Tenn. Crim. App. 1993) (where search warrant apparently never became a part of the record at all, appellate review of the warrant was denied). Failure to do so results in waiver of the issue. *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

## II. Character Evidence

Next, the Appellant argues that admission of his statement regarding owing the "Mexicans" $100,000 violated Tennessee Rule of Evidence 404(b) and constituted reversible error.[4] During the State's direct examination of Sergeant James McWright, he testified that the Appellant made the following statement at the time of his arrest, "He said that he couldn't turn on the Mexicans, 'cause they knew where his family lived and that they would kill him. He said that he owed the Mexicans more than a hundred-thousand dollars for the cocaine that we seized from him." The Appellant objected, and a 404(b) jury-out hearing was held. The objection was based upon the figure $100,000.[5] The proof before the jury showed that approximately two kilograms of cocaine had been discovered in the Appellant's apartment, and the street value of one kilo of cocaine in Nashville was "anywhere from twenty to twenty-four-thousand." Thus, the value of the cocaine in the Appellant's apartment was approximately $48,000. Accordingly, the figure of $100,000 implied that the

---

[3](...continued)
defendant Smith. Lastly, the search of a visitor's vehicle that had just left the defendant's residence yielded approximately five ounces of cocaine.

These facts do support a "reasonable ground of suspicion, supported by circumstances indicative of an illegal act." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998).

[4]The Appellant also appears to argue that the admissibility of this statement had been determined prior to trial. The Appellant, in a document entitled, "Motion in Limine No.3, requested the court to:

instruct the State and its witnesses not to mention or make reference in voir dire, opening statement or in testimony to the facts and crimes charged in Case No. 2000-D-1880.

As grounds for the motion the defendant would state that any mention of that case or the facts of that case would be extremely prejudicial and not probative and therefore should be excluded under Rule 404 of the Tennessee Rules of Evidence.

This motion was granted. First, as pointed out by the State, although the trial court ordered the twenty-one year sentence in this case to run consecutively to a prior drug offense, Case No. 2001-A-421B, the record does not reflect what the offense in Case No. 2000-D-1880 was. Second, the challenged statement was not specifically included in the motion, and the State did not intentionally elicit the information. Finally, the statement pertains to the present offense and does not violate Rule 404(b).

[5]The Appellant did not object to the first sentence of the statement concerning his inability to turn on the Mexicans. The objection was based only on the second sentence of the statement, which referred to owing the Mexicans $100,000.

Appellant had purchased cocaine from the Mexicans on a prior occasion.  Furthermore, Sergeant McWright's notes indicate that this figure was based upon cocaine for "this arrest and the last arrest."

Admissible proof must satisfy the threshold determination of relevancy mandated by Tennessee Rule of Evidence 401, which defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.  Rule 403 adds that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Tenn. R. Evid. 403.  Finally, Rule 404 deals with "character evidence."  Subsection (b) of this rule provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait."  Tenn. R. Evid. 404(b).  However, the same subsection further sets out that such evidence may be allowed "for other purposes" if the following conditions are met prior to admission of this type of proof:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

*Id.*  Providing further clarification concerning the second requirement, "other purposes" have been defined to include: (1) motive; (2) intent; (3) guilty knowledge; (4) identity of the defendant; (5) absence of mistake or accident; (6) a common scheme or plan; (7) completion of the story; (8) opportunity; and (9) preparation.  *State v. Robert Wayne Herron*, No. M2002-00951-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 22, 2003) (citing *Collard v. State*, 526 S.W.2d 112, 114 (Tenn. 1975); NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 404.6 (3d ed. 1995)); *see also* Advisory Commission Comments, Tenn. R. Evid. 404; *State v. Parton*, 694 S.W.2d 299, 302 (Tenn. 1985); *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980); *State v. Jones*, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999).  Should a review of the record indicate that the trial court substantially complied with the requirements of Rule 404(b), the trial court's admission of the challenged evidence will remain undisturbed absent an abuse of discretion.  *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997) (citation omitted).

In the order denying the Appellant's motion for new trial, the trial court found that:

> the Court is of the opinion that the statement, from the jury's prospective, was vague and may have been suggestive of prior contact.  The jury may have regarded this

statement of an amount of monies owed to the Mexicans as being probative of the issue they were empaneled to decide. (i.e. whether the defendant was guilty of possession with the intent to resale or deliver.)

The issue of consequence before the jury in this case was whether the Appellant did knowingly possess cocaine with the intent to deliver. The Appellant's theory of defense at trial was that he was "merely present" in the apartment where the drugs where located. He contended that, because most of the cocaine was found hidden in Agee's bedroom, the State failed to prove that he exercised the requisite "dominion and control" over the drugs. Evidence of the Appellant owing the Mexicans $100,000 was relevant to establish knowledge and intent to possess cocaine on the date in question. *Robert Wayne Herron*, No. M2002-00951-CCA-R3-CD (citing *U.S. v. Tomberlin*, 130 F.3d 1318, 1320-21 (8th Cir. 1997) (defendant put at issue both his knowledge of and intent to possess drugs, asserting "mere presence" defense in prosecution for felony possession by admitting occupation of bedroom but denying knowledge of drugs found at residence; thereby, allowing admission of prior drug convictions)). We find no abuse of discretion with regard to the trial court's ruling on this issue. Furthermore, we conclude that, even if admission of the statement was error, such error was without prejudicial impact upon the jury due to the vagueness of the statement and overwhelming evidence of guilt presented at trial and, as such, constitutes harmless error. *See* Tenn. R. Crim. P. 52(a).

## CONCLUSION

Based upon the foregoing, we conclude that *de novo* review of the Appellant's motion to suppress issue is precluded because the search warrant and supporting affidavit are not included in record. We also conclude that the trial court did not err in admitting the Appellant's statement that "he owed the Mexicans more than a hundred-thousand dollars for the cocaine that we seized from him." Accordingly, the judgment of the Davidson County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE

-7-