IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2008

## STATE OF TENNESSEE v. TIMOTHY A. SUMMERS

**Direct Appeal from the Criminal Court for Union County**
**No. 3298     E. Shayne Sexton, Judge**

**No. E2007-02127-CCA-R3-CD - Filed October 13, 2008**

Following a bench trial in the Union County Circuit Court, the defendant, Timothy A. Summers, was found guilty of one count of driving on a revoked license, second offense (Class A misdemeanor). The trial court subsequently imposed a sentence of eleven months and twenty-nine days, with forty-five days to be served.  On appeal, the defendant raises the single issue of whether the trial court erred in failing to grant his motion to suppress.  Specifically, he contends that the statements made by him on a videotape of the police stop, consisting of an admission that he was driving the vehicle, should have been suppressed because they were obtained as result of a custodial interrogation without the benefit of *Miranda* warnings.  Following review, we conclude that the trial court properly denied the motion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Joshua D. Hedrick (on appeal) and Byron D. Bryant (at trial), Knoxville, Tennessee, for the appellant, Timothy A. Summers.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William Paul Phillips, District Attorney General; and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Officer Randy Summers of the Maynardville Police Department was dispatched to McDonald's in response to a report of an assault.  Upon his arrival, Summers saw the defendant driving through the parking lot in a Dodge pickup truck. He motioned for the defendant to approach, and the defendant pulled the truck into a parking space.  When the defendant exited the truck,

Summers noticed that he smelled of alcohol. In response to Summer's question, the defendant admitted that he had consumed six beers in the previous three hours.

The defendant's brother, who was also in the truck, was first asked by Summers to perform several field sobriety tests. When he was unable to do so, he was placed under arrest. At that point, Officer Summers asked the defendant to perform field sobriety tests. In response, the defendant stated that he was not driving. Officer Summers responded, "You were driving when we pulled in," and the defendant acknowledged that he was. When asked if he would have detained the defendant at this point, Summers stated that he would have, based upon the fact that he had seen the defendant driving and that the defendant smelled of alcohol. However, he did not directly inform the defendant of his suspicions or that he would have been detained. The defendant was unable to perform the field sobriety tests to the officer's satisfaction and was placed under arrest. According to Officer Summers, he did not believe that the defendant needed to be operating a motor vehicle because "he was too impaired." Officer Summers, at some point during the encounter, checked the defendant's driver's license and determined that it had been revoked.

The video camera in Officer Summer's car was recording the events during his encounter with the defendant, including the defendant's performance on the field sobriety tests. On the tape, the defendant is heard admitting that he was driving the truck.

Based upon these events, a Union County grand jury returned a three-count indictment charging the defendant with: (1) DUI, third offense; (2) violation of the implied consent law; and (3) driving on a revoked license, second offense. Prior to trial, the defendant filed a motion to suppress the video tape encounter, asserting that he had not been *Mirandized* when the tape was filmed. Immediately prior to the commencement of the bench trial, the trial court chose not to rule on the motion until the State actually sought to introduce the tape. The court reasoned that because it was a bench trial rather than a jury trial, if a problem resulted from the tape being shown, the court would simply not consider the evidence. The tape was later admitted into evidence over defense objection based upon the court's finding that the defendant was not "in custody" when the tape was made. After hearing the evidence presented, the trial court found the defendant not guilty of the DUI charge but guilty of the driving on a revoked license offense. The violation of the implied consent law charge was dismissed by the State. The defendant was subsequently sentenced to a term of eleven months and twenty-nine days, all suspended but forty-five days. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant asserts that the trial court erred in denying his motion to suppress the video tape and that the error in doing so was not harmless. Specifically, the defendant contends that the tape should have been suppressed because the statements made by the defendant on the tape, namely his admission that he was driving the truck, were the result of a custodial interrogation and were obtained without the benefit of *Miranda* warnings.

In reviewing a trial court's decision on a motion to suppress, this court looks to the facts adduced at the suppression hearing which are most favorable to the prevailing party. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). In considering the evidence presented at the hearing, this court extends great deference to the fact-finding of the suppression hearing judge with respect to weighing credibility, determining facts, and resolving conflicts in the evidence. *Id.*; *see also State v. Walton,* 41 S.W.3d 75, 81 (Tenn. 2001). Indeed, these findings will be upheld unless the evidence preponderates otherwise. *Daniel*, 12 S.W.3d at 423. Although deference is given to the trial court's findings of fact, this court conducts its own appraisal of the constitutional questions presented by reviewing the law and applying it to the specific facts of the particular case. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998) (citing *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

The issue in this case involves the constitutional protection against self-incrimination, which is protected by both the federal and state constitutions. *State v. Blackstock*, 19 S.W.3d 200, 207 (Tenn. 2000). The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492 (1964), provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." To help insure the protections of the Fifth Amendment in the criminal process, the United States Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966), that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Any statement made during custodial interrogation without the benefit of *Miranda* warnings is inadmissible in court. *Dickerson v. United States*, 530 U.S. 428, 432, 120 S. Ct. 2326, 2329-30 (2000).

The requirements of *Miranda* "must be strictly enforced, but only in those situations in which the concerns that motivated the decision are implicated." *State v. Goss*, 995 S.W.2d 617, 629 (Tenn. Crim. App. 1998) (citing *Illinois v. Perkins*, 496 U.S. 292, 296, 110 S. Ct. 2394, 2397 (1990)). The warnings are not required under every circumstance in which police officers come into contact with citizens. Rather, because "the underpinnings of *Miranda* are to dissipate the compulsion inherent in custodial interrogations, to prevent coerced self-incrimination, and to prevent relevant defendant ignorance," *State v. Callahan*, 979 S.W.2d 577, 582 (Tenn. 1998), the requirements of *Miranda* come into play only when the defendant is in custody and is subjected to questioning or its functional equivalent, *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689 (1980). Thus, absent either of these prerequisites, the requirements of *Miranda* are not implicated.

With regard to the issue of custody, the *Miranda* Court defined this requirement as when the defendant is placed under formal arrest or is "otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S. Ct. at 1612; *see also Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1529 (1994) ("The ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."). Our supreme court has expanded that definition to mean "under the totality of the circumstances, [whether] a reasonable person in the suspect's position would consider himself or herself deprived

of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 855 (Tenn. 1996).

Our supreme court expressly adopted the objective analysis employed by the United States Supreme Court and recognized several nonexclusive factors to aid in the assessment of whether a reasonable person would consider himself deprived of freedom of movement to a degree associated with a formal arrest. Relevant factors include:

> [F]actors relevant to that objective assessment include the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

*Id*. The determination of whether an individual is in custody is fact specific, and the trial court should assess the applicability of the relevant factors in making its findings. *Id*. The test is "objective from the viewpoint of the suspect, and the unarticulated, subjective view of law enforcement officials that the individual being questioned is or is not a suspect does not bear upon the question." *Id*. at 852; *see also State v. Payne*, 149 S.W.3d 20, 32-33 (Tenn. 2004).

In addition to the requirement that a defendant was in custody, in order for the doctrine of *Miranda* to apply, we must also find that the defendant was subject to interrogation while he was in custody. Although the *Miranda* court defined interrogation as "questioning initiated by law enforcement officers," 384 U.S. at 444, 86 S. Ct. at 1612, the Supreme Court has since made clear that interrogation is not limited to express questioning by officers. In *Innis*, 446 U.S. at 301, 100 S. Ct. at 1689, the Court stated that interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit incriminating information." Included within this definition is any "practice that the police should know is likely to evoke an incriminating response from a suspect." *Id*. However, "where a defendant makes a statement without being questioned or pressured by a government agent, the statement is admissible, if the statement was freely and voluntarily made by the defendant." *State v. Land*, 34 S.W.3d 516, 525 (Tenn. Crim. App. 2000) (citations omitted).

The defendant contends that he was in custody at the time the statements on the video were made and that the statements were the result of a custodial interrogation. With regard to the issue of custody, the defendant, relying upon the *Anderson* factors, contends that the record establishes that the totality of the circumstances supports a finding that he was in custody. Specifically, he cites to

the following circumstances: (1) he was standing in a parking lot surrounded by flashing blue lights from the police cruiser and three police officers who were limiting his movement by directing him where to stand and whom to face; (2) the officer's testimony that the defendant would have been detained had he tried to leave and the fact that the defendant was not informed that he was free to leave; (3) the fact that the defendant had just seen his brother placed under arrest; and (4) the officer's clear suspicion that the defendant was guilty of an offense. The defendant also notes the trial court's statement that the defendant was "seized" at the time the video tape was made. The State contends that the defendant was not in custody, arguing that the officer, based upon his reasonable suspicion that the defendant had committed a crime, was conducting a brief investigation.

Applying the *Anderson* factors to the facts before us, we conclude that the defendant was not in custody at the time the statements were made. The exchange took place shortly after 9:00 p.m. in the parking lot of a local business in which the defendant drove himself. He had not been transported by officers at the time the statements were made. While there were three officers present and the blue lights on the car were flashing, the defendant seems to have dealt primarily with Officer Summers. The direction provided appears to be for purposes of controlling the situation and enabling the performance of the field sobriety tests. While Summers testified that he would have detained the defendant had he attempted to leave, that message was not conveyed to the defendant. *See State v. Maria A. Dills*, No. M2006-02161-CCA-R3-CD (Tenn. Crim. App., at Nashville, Sept. 21, 2007) (defendant not to be in custody for *Miranda* purposes even though the defendant was the "target" of an investigation and the investigating officer did not feel the defendant was free to leave but these facts were not communicated to the defendant). The defendant was not made aware of Summer's suspicions other than by the implied suspicions inherently associated with the field sobriety tests and Summer's asking the defendant if he had been drinking, both of which are standard practice.

The facts of this case are similar to those in *Berkemer v. McCarty*, 468 U.S. 420, 422, 104 S. Ct. 3138, 3151 (1984), in which the defendant was stopped by a highway patrolman as a result of his erratic driving. The defendant in that case had trouble standing and failed to satisfactorily perform a field sobriety test. *Id*. Although the officer subjectively believed that he would charge the defendant with a traffic offense, he did not advise the defendant that he was in custody, and the defendant made incriminating statements to the officer that he had consumed alcohol and marijuana. *Id*. In reviewing that case, the United States Supreme Court concluded that the statements were admissible, despite the fact that the defendant had not been advised of his *Miranda* rights. In making that determination, the Court held that the brief roadside detention did not constitute "custody" for the purpose of *Miranda*. *Id*. at 440, 104 S. Ct. at 3150.

It is apparent from a review of the record before us that the instant case involved a *Terry*-type stop like the one in *Berkemer*. *See also State v. Andrew Lay*, No. M1998-00257-CCA-R3-CD (Tenn. Crim. App., at Nashville, Mar. 30, 2000). Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect individuals from unreasonable search and seizure by law enforcement officers. "[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as

a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Bartram*, 925 S.W.2d 227, 229-30 (Tenn. 1996)). One such exception to the warrant requirement is a brief investigatory stop where the officer has reasonable suspicion, supported by specific and articulable facts, that an offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968); *State v. Binnette*, 33 S.W.3d 215, 218 (Tenn. 2000). Reasonable suspicion is a subjective standard, to be determined by looking at the totality of the circumstances surrounding the stop. *Id*.

On the facts before us, Officer Summers had reasonable suspicion to detain the defendant based upon the fact that he witnessed the defendant driving and smelled alcohol on his person. Just as the trial court noted, though the defendant was in fact "seized," he was not in custody at the time his statements were made. *See State v. Williams*, 185 S.W.3d 311 (Tenn. 2006). Thus, the protections afforded by *Miranda* were not required. *See State v. David Lane Goss*, No. M2006-01467-CCA-R3-CD (Tenn. Crim. App., at Nashville, July 31, 2007) (holding that the defendant was not "in custody" following a routine traffic stop and performance of field sobriety tests until formally arrested and placed in a patrol car); *State v. Mary Ann McNeilly*, No. M2005-02184-CCA-R3-CD (Tenn. Crim. App., at Nashville, Nov. 22, 2006) (holding that, though "seized" in a valid traffic stop, the defendant was not in custody for *Miranda* purposes until the officer realized the defendant could not perform field sobriety tests and was placed under arrest).

Though not necessary, as we have concluded that the defendant was not "in custody" for *Miranda* purposes, we, nonetheless, address the defendant's contention that his statements were the direct result of interrogation under the standard set forth in *Innis*. According to the defendant, a field sobriety test, which the officer asked the defendant to submit to, was "clearly intended to elicit an incriminating response." He also asserts that the exchange between the defendant and Officer Summers following Summers' request to the defendant to take a field sobriety test supports a finding of interrogation. When the defendant denied driving the vehicle, Summers responded, "You was driving when we pulled in," to which the defendant responded, "I was, but I ain't driving now." He argues that the officer's response to the defendant's statement was clearly intended to elicit an incriminating response because the officer's accusation that the defendant was driving served no purpose but to draw the defendant into either admitting that he was driving or failing to deny he was driving, either which would be an incriminating response. We reject this contention. The use of field sobriety tests following a *Terry*-type stop, to determine if the defendant is intoxicated, are not considered an interrogation. *See Berkemer*, 468 U.S. at 440, 104 S. Ct. at 3150. Moreover, we cannot conclude that Officer Summer's reply to the defendant's denial that he was driving the vehicle was sufficient to support a finding that the defendant was being interrogated. Summers was not questioning the defendant and was simply replying to the defendant's voluntary remark, which Summers knew to be false based upon his own observations. As noted, voluntary statements, absent questioning or pressure, are not barred by *Miranda*. *See Land*, 34 S.W.3d at 525. As we have found no error in the trial court's denial of the defendant's motion to suppress, we do not address the defendant's contention that such alleged error was harmless.

**CONCLUSION**

Based upon the foregoing, the Union County Circuit Court's decision to deny the motion to suppress is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE