# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 15, 2013

## STATE OF TENNESSEE v. JONATHAN CARL DAVIDSON

### Appeal from the Circuit Court for Maury County
#### No. 21539     Jim T. Hamilton, Judge

---

### No. M2012-02204-CCA-R3-CD  - Filed 06/05/2013

---

The Maury County grand jury indicted appellant, Jonathan Carl Davidson, for driving under the influence, second offense, and violation of the open container law. Following an unsuccessful motion to suppress the evidence, appellant entered a guilty plea to driving under the influence, second offense. Pursuant to the plea agreement, the State dismissed the violation of the open container law charge, and the trial court sentenced appellant to eleven months, twenty-nine days in the county jail, with forty-five days to serve. As a condition of the plea agreement, appellant reserved the right to certify a question of law challenging the legality of the initial traffic stop. Following our review, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Brian Clay Johnson (on appeal) and Joel R. Bellis (at hearing), Columbia, Tennessee, for the appellant, Jonathan Carl Davidson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; T. Michel Bottoms, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

Spring Hill Police Officer David Kloke arrested appellant on August 17, 2011, for driving under the influence, second offense, and violation of the open container law. The affidavit of complaint for driving under the influence stated that appellant "was found to be

operating [a] motor vehicle while under [the] influence of an intoxicant . . . . [Appellant] was unsteady on [his] feet, had bloodshot eyes[,] and [had a] strong odor of alcoholic beverage emitting about [his] person." The affidavit of complaint for violation of the open container law stated that a "search of [appellant]'s vehicle revealed a mason jar containing a small amount of what [appellant] described as assorted liquor," which "was located in the driver's side door."

Appellant moved to suppress the evidence against him, arguing, *inter alia*, that the State could not show that Officer Kloke had a reasonable suspicion, supported by specific and articulable facts, that a crime had been, was being, or was about to be committed by appellant. The trial court held a hearing on the motion to suppress on August 10, 2012. Officer Kloke was the sole witness.

Officer Kloke testified that he had been employed by the Spring Hill Police Department for ten years. On August 17, 2011, he came into contact with appellant following a 9-1-1 call by "Ms. Cartwright." Ms. Cartwright told the 9-1-1 dispatcher that her ex-boyfriend, the appellant, was "causing a disturbance" at her house. Officer Kloke testified that he "believed," based on the information he received from the dispatcher, that "at the minimum, . . . a verbal domestic [had] occurred." While Officer Kloke was en route to Ms. Cartwright's residence, the dispatcher advised Officer Kloke that the dispatcher had "heard a male screaming in the background, yelling." The dispatcher later informed Officer Kloke that Ms. Cartwright reported that appellant had left the residence and was driving a "white, panel van." She also provided the license plate number of appellant's vehicle.

Officer Kloke testified that he observed a vehicle matching Ms. Cartwright's description turning off Mead Drive onto Depot Street. He turned around to follow the vehicle and confirmed that the license plate number also matched. Officer Kloke testified that he initiated a traffic stop at that point. He further testified that the basis for the stop was to investigate "a verbal domestic." Officer Kloke had not observed appellant commit any traffic violations.

On cross-examination, Officer Kloke testified that "verbal domestic" situations often "become[] more" after investigation. He said that "dispatch can only get so much information," so it was his "job to investigate it further." Officer Kloke testified that he did not know Ms. Cartwright personally but was informed by dispatch that she was appellant's ex-girlfriend. Officer Kloke testified that appellant was charged with violating an order of protection, but the charge was dismissed in general sessions court.[1] He said that another

_____

[1] Officer Kloke did not testify regarding whether he learned about the order of protection before or
(continued...)

-2-

officer went to Ms. Cartwright's house to speak with her after Officer Kloke arrested appellant. Appellant was not charged with domestic assault.

On re-direction examination, Officer Kloke testified that his department's policy regarding "domestic calls" was to "investigate it to the fullest." He said that his intent when stopping appellant was to "get his side of [the situation] . . . to figure out exactly what happened."

At the conclusion of the hearing, the trial court denied appellant's motion to suppress the evidence, stating as follows:

> What you have here is . . . a person who [called] the police department in Spring Hill and complained about her ex-boyfriend['s] coming over there and raising cane at her house. [The 9-1-1 dispatcher] puts it out on the dispatch that [this is] the information that he's received. This officer is on patrol. He gets a description of the vehicle and the license tag number from dispatch. He falls in behind the car[] when he sees it[.] [H]e verifies that the tag number on the car he's following is the same tag number that the dispatcher had, so nothing wrong with that.

Subsequently, appellant entered a conditional guilty plea, attempting to reserve the following certified questions of law:

> a. Did the State meet [i]ts burden of proving it had a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was committed to make a valid stop upon the Defendant[?]

> b. If the State failed to establish within the suppression hearing that it did not [sic] have a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was committed to make a valid stop upon the Defendant, should the above styled case be dismissed for failure by the State to meet [i]ts initial burden that a valid stop was made in order to conduct a valid search on the Defendant[?]

---

[1](...continued)
after arresting appellant. Furthermore, his testimony did not state whether the order of protection involved the complainant in this case.

## II. Analysis

### A. Certified Question

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. Rule 37 outlines the following requirements:

> (i)      the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii)     the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii)    the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv)    the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. App. 37(b)(2)(A)(i)-(iv) (2011).

Our courts have explicitly defined the prerequisites to an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2)(A):

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the

-4-

trial court at the suppression hearing must be identified in the statement of the certified question of law[,] and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State[,] nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to [Tennessee Rule of Criminal Procedure] 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation[,] and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

*State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The *Preston* requirements are mandatory. *State v. Bowery*, 189 S.W.3d 240, 245-46 (Tenn. Crim. App. 2004) (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). Failure to comply with the requirements results in dismissal of the appeal. *Id.* (citing *Pendergrass*, 937 S.W.2d at 837).

In this case, the reserved questions of law are not included on the judgment form, but the questions are set forth in a document entitled "Agreed Order," which was signed by the trial court, defense counsel, and counsel for the State. We conclude that the "Agreed Order" meets the requirements of Tennessee Rule of Criminal Procedure 37(b)(2)(A)(i), (iii), and (iv). *See* Tenn. R. Crim. P. 37, Advisory Comm'n. Cmt. to 2011 Amendment ("[T]he amendment removes the requirement that a separate document setting forth the certified question of law be incorporated by reference in the judgment, and it allows the requirements of the Rule to be met by an order entered by the trial court certifying the question."); *cf. State v. James Hayes*, No. M2012-00262-CCA-R3-CD, 2013 WL 1896828, at *2-3 (Tenn. Crim. App. May 6, 2013) (A document entitled "Addendum to Judgment" did not meet requirements under the 2011 amendment to Rule 37 when it was signed only by defense counsel). However, appellant's second reserved question of law is not dispositive of the case because it asks whether the case should be dismissed, which is antithetical to the definition of "dispositive." Nevertheless, we conclude that the prerequisites for consideration of the merits of a certified question have been met by the first reserved question. Therefore, we

now begin our analysis of whether the police had reasonable suspicion that appellant had been or was about to commit a crime sufficient to justify the traffic stop.

## II. Motion to Suppress

After an evidentiary hearing on the merits of a motion to suppress, we attribute to the factual findings of the trial court the weight of a jury verdict. *State v. Makoka*, 885 S.W.2d 366, 371 (Tenn. Crim. App. 1994). We review de novo the trial court's legal conclusions denying a motion to suppress. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

We begin with the proposition that "[b]oth the state and federal constitutions protect against unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered is subject to suppression." *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). Our supreme court has recognized three categories of police interactions with private citizens: "(1) a full-scale arrest, which requires probable cause; (2) a brief investigatory detention, requiring reasonable suspicion of wrongdoing; and (3) a brief police-citizen encounter, requiring no objective justification." *Id.* (citing *Daniel*, 12 S.W.3d at 424). "The police may stop a vehicle if they have either probable cause or an 'articulable and reasonable suspicion' that the vehicle or its occupants are subject to seizure for violation of the law." *State v. Robert Jason Burdick*, M2011-01299-CCA-R3-CD, 2012 WL 2151489, at *10 (Tenn. Crim. App. June 13, 2012), *perm. app. denied* (Tenn. Sept. 18, 2012) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn.1992)).

Appellant's certified question specifically challenges whether Officer Kloke had a reasonable suspicion that appellant had committed a crime to justify stopping appellant's vehicle. His question necessarily implicates the second category of police-citizen interaction, the brief investigatory stop. Our supreme court has recently summarized the present state of the law regarding brief investigatory stops:

When an officer has reasonable suspicion, supported by specific and articulable facts, to believe that a criminal offense has been or is about to be committed, a brief investigatory detention is permitted. Reasonable suspicion must be supported by more than the officer's inchoate and unparticularized suspicion or 'hunch[]'; however, reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause . . . [and] can arise from information that is less reliable than that required to show probable cause.

Trial courts must examine the totality of the circumstances when evaluating whether an officer has established the requisite level of suspicion to justify a [brief investigatory] stop. These circumstances include an officer's observations, information from other law enforcement personnel or agencies, information from citizens, known patterns of criminal offenders, or deductions based upon experience. When evaluating the reasonableness of the police officer's suspicion, the nature of the crime suspected may be a factor.

*State v. James David Moats*, --- S.W.3d ---, No. E2010-02013-SC-R11-CD, 2013 WL 1181967, at *5 (Tenn. Mar. 22, 2013) (citations and internal quotation marks omitted).

In this case, Officer Kloke had more than an inarticulate hunch. Officer Kloke's suspicion of appellant's wrongdoing was reasonable and was supported by specific and articulable facts. He knew that Ms. Cartwright had called 9-1-1 because her ex-boyfriend, the appellant, had been at her house causing a disturbance, and he deducted from his experience and the patterns of domestic assault offenders that there was a probability that something more than a verbal argument had occurred. In addition, the Spring Hill Police Department had an expressed policy to fully investigate domestic disturbance calls.

As this court noted in *State v. James Oliver Grayless*, No. 03C01-9510-CC-00311, 1997 WL 749406, at *5 (Tenn. Crim. App. Dec. 5, 1997), "[h]uman interaction disturbance calls are fraught with the possibility of danger and/or bodily injury . . . . A reasonable officer could conclude that he was en[]route to a possible domestic violence or similar call." In such a situation, it would be reasonable for a police officer to briefly detain a suspect to further investigate. *See id.* In *Grayless*, this court determined that under the totality of the circumstances, a police officer had reasonable suspicion to briefly detain a citizen when the citizen was exiting a vehicle associated with a "disturbance call." *Id.* at *1, 3-4.

The United States Supreme Court asked in *Terry v. Ohio*, "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)

(quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).  In this case, was it reasonable for Officer Kloke to stop appellant's vehicle when he knew that appellant had just left the scene of a domestic disturbance and when he knew that investigations of domestic disturbances often resulted in criminal charges?  Based on the totality of the circumstances, we conclude that the answer to that question is yes. Just as in *Grayless*, Officer Kloke had a sufficiently reasonable suspicion that appellant had committed a crime to justify a brief investigatory detention.  Therefore, we affirm the judgment of the trial court.

## CONCLUSION

Based on the parties' briefs and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE