# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 23, 2014

## STATE OF TENNESSEE v. RODERICK JERMAINE McALPIN

**Direct Appeal from the Criminal Court for Knox County**
**No. 100681     Steven Sword, Judge**

**No. E2013-02267-CCA-R3-CD - Filed October 2, 2014**

Defendant, Roderick Jermaine McAlpin, was indicted by the Knox County Grand Jury for possession with intent to sell more than .5 grams of cocaine within 1,000 feet of a public school; possession with intent to deliver more than .5 grams of cocaine within 1,000 feet of a public school; possession with intent to sell more than .5 grams of cocaine within 1,000 feet of a child care agency; possession with intent to deliver more than .5 grams of cocaine within 1,000 feet of a child care agency; criminal trespass, and public intoxication. Due to an error in the indictment, the trial court dismissed the public intoxication charge at the State's request. Defendant was convicted by a jury of the remaining offenses. The four felony drug convictions were merged into one Class A felony conviction of possession with intent to sell more than .5 grams of cocaine within 1,000 feet of a public school. The trial court sentenced Defendant to serve 16 years' incarceration for this conviction and 30 days, concurrently, for the conviction of criminal trespass. On appeal, Defendant contends that the trial court erred by denying his motion to suppress the crack cocaine, and that the evidence was insufficient to support his convictions. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Roderick Jermaine McAlpin.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; Philip Morton and Hector Sanchez, Assistant District Attorneys General, for the appellee, the State of Tennessee.

# OPINION

*Facts*

Officer Joel Ascencio of the Knoxville Police Department testified that on September 11, 2012, he was patrolling the area of the Western Heights housing project. At around 3:30 a.m., he observed Defendant walking between some buildings. Officer Ascencio approached Defendant to ask if he lived there. Officer Ascencio testified that the area is a "high crime" area and that the housing project maintains a "no trespass list" to keep non-residents from being on the property. As Officer Ascencio approached Defendant, he saw Defendant make a throwing motion with his hand. Officer Ascencio asked Defendant if he lived there. Defendant had a strong odor of alcohol on his breath. Officer Ascencio discovered that Defendant was on the no trespass list and had already been "served" with notice not to trespass. Officer Ascencio told Defendant to sit on the curb in front of his cruiser while Officer Ascencio waited for another officer to arrive. Officer Ascencio walked over to the area where Defendant had been standing and found a bag of crack cocaine lying in the grass. He testified that the bag was on top of the grass and was "not embedded at all." Officer Ascencio testified that less than ten minutes had elapsed between the time he saw Defendant make the throwing motion and the time he found the crack cocaine. Officer Ascencio did not see any other pedestrians or motorists in the area at the time. Defendant did not have any drug paraphernalia on his person. Officer Ascencio used a field test kit to weigh the crack cocaine, which weighed 2.8 grams. Officer Ascencio testified that the consistency and size of the individual rocks indicated to him that they were intended to be sold or delivered.

Sergeant Joshua Shaffer was qualified by the trial court to testify as an expert in the area of drug investigation. Sergeant Shaffer examined the crack cocaine found by Officer Ascencio. He determined that the crack cocaine was "probably freshly cooked" because there was "still quite a bit of what appears to be particles sticking probably from the moisture." Sergeant Shaffer testified that the bag contained one "larger chunk" and "some smaller individual pieces that ha[d] been broken off." Sergeant Shaffer testified that an individual "rock," weighing .1 to .2 grams would be worth $20. He estimated the value of the crack cocaine found by Officer Ascencio, once broken into individual rocks, would be worth between $280 and $560, depending on the size and number of individual rocks. Sergeant Shaffer opined that based on his examination of the evidence, the crack cocaine was intended for sale or delivery.

*Analysis*

*Motion to suppress*

Defendant contends that the trial court erred by denying his motion to suppress the bag of crack cocaine. Defendant argues that Officer Ascencio had no objective reason to suspect Defendant was engaged in any unlawful activity when Officer Ascencio initially stopped to investigate why Defendant was in the Western Heights housing project.

An appellate court may consider the proof presented at the suppression hearing and at the trial when determining whether the trial court properly granted or denied a motion to suppress. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). It is well-established that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). The defendant bears the burden of showing that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 23; *Yeargan*, 958 S.W.2d at 629.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. A warrantless search or seizure "is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

In a written order denying Defendant's motion to suppress, the trial court determined that Officer Ascencio's encounter with Defendant was "a clear example of a police officer exercising his community caretaking role which fits into the third category of encounters as a brief police-citizen encounter requiring no objective justification." The trial court noted that Officer Ascencio pulled his car into the closest available parking space; he did not turn on his emergency lights or siren; he did not tell Defendant to stop or halt; he did not command Defendant to come to him; and he did not draw his weapon. He engaged in a short conversation with Defendant and asked if he was on the no trespass list. The police video shown to the trial court at the suppression hearing showed that Defendant freely answered Officer Ascencio's questions. After Officer Ascencio discovered that Defendant was on the no trespass list, he then told Defendant to sit on the curb in front of the police cruiser and he called for another officer. After a second officer arrived, Officer Ascencio returned to the area where he had seen Defendant make a throwing motion and found the bag of crack

cocaine. The trial court ruled that a seizure did not occur until, "at the earliest," when Officer Ascencio told Defendant to go to his car so that he could write Defendant a citation for trespassing. The trial court found that "the drugs had been discarded before a seizure took place."

Unlike full-scale arrests and investigatory detentions, "third-tier" encounters are consensual and do not require probable cause or reasonable suspicion. *State v. Hawkins*, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997). These consensual encounters include "community caretaking or public safety functions that involve *no coercion or detention*." *Id*. (emphasis added). "[O]ur courts have consistently recognized that police officers may approach an individual in a public place, whether walking or in a parked car, and ask questions without implicating constitutional protections." *State v. Moats*, 403 S.W.3d 170, 181 (Tenn. 2013) (citations omitted). As this court observed in *Hawkins*, "[w]ith regard to the community caretaking function, it is now generally held that the police may engage a citizen and ask questions as long as the citizen is willing to carry on the conversation." 969 S.W.2d at 939.

However, "what begins as a consensual police-citizen encounter may mature into a seizure of the person." *State v. Daniel*, 12 S.W.3d 420, 427 (Tenn. 2000). In determining whether a seizure has occurred, our supreme court has adopted a totality of the circumstances test. *Moats*, 403 S.W.3d at 182 (citing *Daniel*, 12 S.W.3d at 424).

> Some of the factors which are relevant and should be considered by courts when applying this totality of the circumstances test include the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen.

*Daniel*, 12 S.W.3d at 425-26.

In this case, Officer Ascencio did not activate his blue lights or otherwise exhibit any show of authority. We conclude that the evidence does not preponderate against the trial court's finding that Officer Ascencio's initial encounter with Defendant was a brief police-citizen encounter, which did not require probable cause or reasonable suspicion.

We also conclude that the bag containing crack cocaine was in plain view of the officer and did not require a warrant. Furthermore, its retrieval did not constitute a search. *See State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). "[T]he "plain view" exception to the

Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Washington v. Chrisman*, 455 U.S. 1, 5-6, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982). "The plain view doctrine is applicable when (1) the object seized was in plain view, (2) the viewer had a right to be in the position to view the object, and (3) the incriminating nature of the object was immediately apparent." *Id*. (citing *State v. Cothran*, 115 S.W.3d 513, 524-25 (Tenn. Crim. App. 2003)).

Because Defendant did not have a reasonable expectation of privacy in the parking lot, he was without standing to challenge the actions of the officer. The incriminating character of the plastic bag containing crack cocaine was immediately apparent to Officer Ascencio. Accordingly, Defendant is not entitled to relief on this issue.

*Sufficiency of the evidence*

Defendant also contends that there was insufficient evidence to support his convictions. Specifically, Defendant asserts that the evidence was entirely circumstantial that Defendant had possessed the bag of crack cocaine and that the crack cocaine was possessed with the intent to sell or deliver. The State responds that the evidence was sufficient to support an inference that Defendant possessed the bag of cocaine and that he intended to sell or deliver the cocaine. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 208 Tenn. 75, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty

verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Bland*, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *Id*. (citing *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982)).

When the State offers proof of guilt based on circumstantial evidence, the jury decides how much weight to give to circumstantial evidence. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (internal quotation and citation omitted)). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. *State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010) (citing *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956)). We note that the standard of review is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Defendant asserts that the State failed to provide sufficient evidence to establish possession and intent. It is an offense in Tennessee "for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4).

We conclude that the evidence was sufficient for a reasonable juror to find Defendant guilty of possession with intent to deliver. The proof regarding intent in this case, as in most cases, was largely circumstantial. However, a jury is permitted to infer the defendant's intent based on "the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest." *Id*. § 39-17-419. Such "other relevant facts" that can give rise to an inference of intent to sell or deliver include the absence of drug paraphernalia, the presence of a large amount of cash, the packaging of the drugs, and the street value of the drugs. *See State v. Belew*, 348 S.W.3d 186, 191-92 (Tenn. Crim. App. 2005) (citing *State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (finding sufficient evidence to support the jury's finding of intent to deliver when the defendant possessed 1.7 grams of crack cocaine, no drug paraphernalia, and 5.1 grams of baking soda); *State v. Logan*, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998) (finding sufficient evidence of intent to sell to support conviction when the defendant possessed a large amount of cash and several small bags of cocaine); *State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (finding that the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); *State v. Matthews*, 805 S.W.2d 776, 782 (Tenn.

Crim. App. 1990) (finding that testimony concerning amount and street value of drugs was admissible to prove the defendant's intent).

The evidence in this case supports the inference that Defendant possessed the crack cocaine with the intent to deliver and sell it. Officer Ascencio and Sergeant Shaffer both testified that the size and consistency of the rocks indicated that they were intended to be sold or delivered. Sergeant Shaffer testified that there was one "larger chunk" and "some smaller individual pieces that ha[d] been broken off." Those smaller pieces would normally sell for $20 per "rock." Another circumstance surrounding the arrest also supports the inference that Defendant intended to sell or deliver the crack cocaine. Defendant had no drug paraphernalia in his possession.

Defendant argues that there was no evidence presented "to verify that the bag had not been present at that location prior to [his] arrival there." However, the circumstantial evidence supports the inference that Defendant possessed the bag of crack cocaine and threw it into the grass when he saw Officer Ascencio approaching him. Officer Ascencio observed Defendant walking through a high crime area at 3:30 a.m. Defendant did not reside there, and in fact, Officer Ascencio inquired into the "no trespass list" and discovered that Defendant was not supposed to be on the property. Officer Ascencio saw Defendant make a throwing motion with his hand. Less than ten minutes later, and after speaking to Defendant, Officer Ascencio discovered a bag of crack cocaine in the same area where he had seen Defendant walking when he made a throwing motion. Officer Ascencio testified that the bag was lying on top of the grass, and there were no other pedestrians or vehicles in the area at the time. Sergeant Shaffer testified that the substance appeared to have been "freshly cooked[.]"

We conclude that the evidence was sufficient to support Defendant's convictions. Defendant is not entitled to relief on this issue.

In summary, we have reviewed the record and the briefs of the parties and finding no error, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE